### PULLEN et al. v. RUSS et al.
#### No. 5830.

Court of Civil Appeals of Texas. Amarillo.

Feb. 2, 1948.

Rehearing Denied March 22, 1948.

Underwood, Wilson, Sutton, Heare & Boyce, of Amarillo, and H. H. Smith, of Panhandle, for appellants.

Sanders, Scott, Saunders & Smith, of Amarillo, for appellees.

LUMPKIN, Justice.

This appeal is from a judgment of the District Court of Carson County, Texas, in which the proffered will and codicils of the testator, O. P. Russ, were denied probate. Previously the will and codicils were denied probate by the Probate Court of Carson County, both in the form in which they were originally written as well as

in the form in which they now exist. The appellants, Iva Pullen and Paul Russ, were the proponents; the appellees, Charles Russ and wife Mable Russ, Florence Russ Wasson and husband Clifford Wasson, Minnie Russ Howard and husband W. A. Howard, Rose Knight and husband Harry Knight, and John Irvin, were the contestants. From the order of the probate court, the proponents duly appealed to the district court; and from the judgment of the district court, the appellants excepted and have perfected their appeal to this court.

From the record it appears that the testator, O. P. Russ and his wife, Laura I. Russ, lived for a number of years in Carson County, where they owned some 4½ sections of land. Mr. and Mrs. Russ had no children of their own. In 1911, when they moved from Missouri to Texas, they brought with them some seventeen children. Mr. and Mrs. Russ often referred to these children as their own. Among these children are to be found the parties to this suit. On April 27, 1929, Mrs. Russ died testate leaving all of her property to her husband. Upon the application of O. P. Russ, Mrs. Russ' will was admitted to probate in Carson County. The will, dated September 15, 1928, named her husband as independent executor and further provided that if her husband should predecease her, she bequeathed $5,000 each to Iva R. Pullen, Alma Russ Russell, Minnie Russ Howard, Agnes Russ Fletcher, Florence Russ Wasson, Mabel Russ Hawkins, Charles Russ Hawkins, Ellis Russ Hawkins, Willie Russ Miller, Paul Russ Holder, Arthur Russ Mallet, and John Russ Irvin; and $1,000 each to Maude Russ Terrell, Goldie Russ Duby, Robert M. Cordell, Oliver P. Cordell, Laura Irvin Boyd, and Edna Russ. One-half of the residue of the estate was to go to the Salvation Army, one-fourth to the Texas Scottish Rite Hospital for Crippled Children, and one-fourth to the Presbyterian Home for Children at Amarillo, Texas. Paragraph 7 of the will reads as follows:

"My said husband, O. P. Russ, is making a will containing the same provisions as this and it is our mutual desire and I direct that should it so happen that we should both die at the same time, or so nearly the same time, that it could not be told which is the survivor, that the legatees named in our wills shall take only one bequest as though one of us had survived the other."

Following the death of his wife, the testator, O. P. Russ, executed the proffered will, dated June 22, 1933, revoking all previous wills. A study of this instrument reveals that it is not in the same form as when executed. In its present form the will contains several erasures and interlineations. Further the record reveals that Mr. Russ executed three holographic codicils, one dated December 9, 1935, the second dated August 25, 1936, and the third dated March 30, 1940. Mr. Russ died December 14, 1945. The proponents, Iva Pullen and Paul Russ, the appellants herein who are named by the March 30, 1940, codicil as independent executors, made application for probate of the 1933 will.

Trial was to a jury. From the twenty-one special issues submitted, the jury determined among others the following facts: That O. P. Russ executed the instrument dated June 22, 1933, and that he had testamentary capacity at the time he did so; that the three codicils were written by O. P. Russ and that he had testamentary capacity at the time he wrote them; that O. P. Russ and his wife, Laura I. Russ, executed identical wills on September 15, 1928, in which each named the other as beneficiaries; that on that date they agreed with each other to make testamentary disposition of their property by each devising to the survivor all of his or her property with the remainder to certain of their children and to certain charities in designated portions; that in accordance with this agreement each did make such a will; and that O. P. Russ elected to take under the will of Laura I. Russ, deceased.

When the 1933 will was proffered for probate, it had attached to it six deeds all properly executed by the testator. Concerning these deeds the jury found as follows: That the six deeds now affixed to the

will and dated June 22, 1933, were attached to it at the time O. P. Russ executed his will; that a total of eight deeds, however, had been attached to the will on June 22, 1933, at the time it was executed; that the changes and interlineations now appearing on the will were made by O. P. Russ, or someone under his direction, prior to March 30, 1940; and that O. P. Russ, or someone at his direction, detached two deeds from the will but that when he detached these two deeds, O. P. Russ did not intend to destroy as a testamentary disposition of his property all of the instruments now being offered for probate. As a result of the verdict, the court rendered judgment whereby the will was denied probate.

The appellants assail the trial court's judgment on the theory that the court erred in holding ultimately that the appellees have shown a right to maintain this contest. The appellants argue that since this proceeding in the district court was solely an appeal from the order of the probate court denying the probate of the proffered will, the district court could not assume jurisdiction of the issue of whether the testator and his wife agreed to and did in fact execute prior mutual wills. At the outset we believe we should point out that paragraphs 1 and 2 of Mrs. Russ' will read as follows:

Paragraph 1. "I direct that my just debts shall first be paid and that the legacies hereinafter give, shall, after the payment of my debts, be paid out of my estate by my executor or executrix as hereinafter appointed."

Paragraph 2. "If he survives me, all the rest and residue of my estate, after payment of my debts, including real, personal, mixed and other property, and rights of any and all kinds whatsoever, whenever and wherever found, I give, devise and bequeath to my beloved husband, O. P. Russ, to have and to hold as his own separate estate."

Paragraph 3 begins, "Should my said husband predecease me, then I give and bequeath my property in parcels," and then follow the various amounts of money to be given the various legatees as previously set forth. In our opinion, paragraph 2 of Mrs. Russ' will clearly and unequivocally bequeaths to her husband the residue of her estate to use as his separate property. There is no question here of remaindermen. Since paragraph 3 begins, "Should my husband predecease me," this paragraph and its subdivisions have no force or effect and do not enter into this case. The record shows that O. P. Russ did not predecease Mrs. Russ, but on the contrary outlived her by about sixteen years.

The courts of this state have held on several occasions that the district court on appeal from probate orders can pass only on issues which can be passed upon by the probate court. When an application to probate a will is properly presented, the probate court has only two issues to determine: first, whether the instrument offered is the last will and testament of the testator; and second, whether the instrument is properly executed. Stated in other words, the function of the probate court is limited to determining whether the will was executed by the decedent in the manner prescribed by the statute and at a time when he was legally competent to execute it free from duress, fraud, and undue influence. Also it has been repeatedly held that questions as to property rights which might arise out of a construction of the terms of the will are not to be determined in a proceeding for the probate of a will and that, therefore, the mere probating of a will is not final and conclusive as to the construction of the instrument. Ellsworth v. Aldrich et al., Tex.Civ.App., 295 S.W. 206, writ refused; Burton et al. v. Connecticut General Life Ins. Co. et al., Tex. Civ.App., 72 S.W.2d 318, writ refused; Huston et al. v. Cole et al., 139 Tex. 150, 162 S.W.2d 404. In this case it is the contention of the appellees that although the probate court is limited to determining whether the instrument proffered is the last will of the testator, it is the duty of the court to enter for probate the last legal will of the testator. The appellees argue that since Mr. Russ had accepted an advantage under the mutual and contractual will of Mrs. Russ, the testator is now estopped from proffering the 1933 will. Assuming

that the 1928 will was mutual and contractual, in our opinion the testator had the power to revoke and rescind that will by the 1933 instrument and the subsequent codicils. Of course, inasmuch as their contract, if they had one, rested upon the mutual promise of the contracting parties, it cannot be rescinded except by the consent of both. As it takes the mutual consent of both to make the contract, so it takes the mutual consent of both to rescind or destroy the contract which, because of Mrs. Russ' death in 1929, would be impossible. However, the will, though not the contract, if they had one, was revoked by the 1933 will and the subsequent codicils; and since the 1928 will had been revoked by Russ, it could not be probated. The revocation destroyed the right to probate, but any contract they may have had remained; and the last will being probated would extend no additional rights by reason of the fact it was probated. "Courts of equity, considering that done which ought to be done, would enforce the original contract by impressing a trust on the property received under the last will in favor of the original promisee." Stewart v. Todd et al., 190 Iowa 283, 173 N.W. 619, 622, 180 N.W. 146, 20 A.L.R. 1272; Underhill, Law of Wills, vol. 1, p. 390; Lawrence v. Prosser et al., 88 N.J.Eq. 43, 101 A. 1040; Perkins et al. v. Allen et al., 133 Wash. 455, 234 P. 25; Ellsworth v. Aldrich et al., supra.

■ The law is well settled that the probate courts of this state have no jurisdiction to construe a will or pass judgment on alleged prior contracts to make devises of property. The probate court being without jurisdiction to pass on the question raised by the appellees, "the district court had none on appeal, its jurisdiction being limited to such as the probate court could properly have exercised." Huston v. Cole, supra [139 Tex. 150, 162 S.W.2d 406]. The trial court had no jurisdiction in this suit over the issue as to whether O. P. Russ and his wife agreed to and did execute prior mutual wills. Ellsworth v. Aldrich et al., supra. In our opinion the court erred in denying the probate of the proffered will, and in this connection we sustain the appellants' contention.

The appellants next contend that the trial court erred in submitting the issue of undue influence to the jury and further erred in refusing to disregard the jury's failure to answer this issue.

Over the objection of the appellants the court had submitted the following issue to the jury: "Do you find from a preponderance of the evidence that the instruments offered for probate as the will of O. P. Russ were procured through undue influence exercised upon him by Iva Pullen?" The jury did not answer this issue.

It appears from the record that after Mrs. Russ died in 1929, Charles and Mabel Russ, two of the appellees, moved from the places where they had been living near Mr. and Mrs. Russ; and Iva Pullen, one of the appellants, moved on to the home place, where Mr. Russ continued to live. After these changes had taken place, Mr. Russ in 1933 destroyed the will he had executed in 1928 and signed the 1933 will in which he named as devisees only eight of his children. Among those not named in the last will were Charles and Mabel Russ. In 1935 Mr. Russ signed a codicil in which other of his children were left out. Introduced in evidence were ninety-four of Mr. Russ' cancelled checks which show that from 1940 until his death, and subsequent to the date he executed the last codicil to his will, Mr. Russ gave $13,550.41 to Iva Pullen's family. During this same period he gave $2,808 to four of the other children, although during this same period he gave nothing to the appellees.

The appellees assert that the evidence is sufficient to raise the issue of undue influence.

■ Undue influence can seldom be established by direct and positive proof; therefore, if it exists at all, it usually must be shown by circumstances. It has been held that the opportunity to exert such influence, the age of the testator, his physical condition, the fact he preferred one child over another, and the original testamentary intentions of the deceased are circumstances which, if taken alone, would not necessarily be evidence of undue influence. However, when taken in the same

case and when the devise is either unnatural or, to say the least, contrary to the testator's previously announced intentions, such combined facts and circumstances are sufficient to take the issue of undue influence to the jury. Russell et al. v. Boyles et al., Tex.Civ.App., 29 S.W.2d 891, error dismissed.

The evidence in this case shows Mr. Russ to be a man of strong character and one accustomed to conducting his own business. In 1928 he conditionally bequeathed his property as did his wife, Laura I. Russ. On several occasions he stated that he and his wife had fixed things so their property would be divided among their children. The evidence shows that following Mrs. Russ' death, Iva Pullen moved over on the Russ home place; that soon thereafter three of the appellees, Charles and Mabel Russ and Florence Wasson, moved off the home place; that Iva Pullen and her family received more money from Mr. Russ than did the other children. Mr. Russ was sixty-nine years old when he executed the 1928 will, seventy-four years old when he made the 1933 will, nearly seventy-seven years old when he executed the 1935 codicil, and eighty-two years old when he executed the 1940 codicil. He was eighty-six years old at the time of his death. The evidence also shows that as a result of each change in Mr. Russ' will, Iva Pullen received a larger share of the estate; and, although Charles Russ had been with him many years, the testator did not name him as a beneficiary in his 1933 will or the subsequent codicils. There is nothing in the evidence to show that Mr. Russ was not mentally alert and capable of conducting his own affairs during these later years of his life. There is nothing to suggest that Mr. Russ was insane or did not have the necessary mental capacity to perform these various testamentary acts.

Our courts have held that undue influence must be of such a nature as to destroy the free agency of the testator. It must be sufficient to prevent the exercise of that discretion which the law requires in relation to every testamentary disposition. The burden of proving undue influence is on the party contesting the probate of the will. Patterson v. Lamb, 21 Tex.Civ.App. 512, 52 S.W. 98, writ refused; McIntosh v. Moore, 22 Tex.Civ. App. 22, 53 S.W. 611; Morrison v. Thoman et al., 99 Tex. 248, 89 S.W. 409, error dismissed; Long v. Long et al., 133 Tex. 96, 125 S.W.2d 1034. It has been held that although a testator was under the general and even the controlling influence of another person in the conduct of his affairs, such will not suffice to invalidate a will on the grounds of undue influence unless that influence was specially exerted upon the testamentary act. Patterson v. Lamb, supra. Likewise it has been held that persuasion, argument, and solicitation are permissible and cannot be considered undue influence unless these acts subvert and overthrow the will of the testator and cause him to do a thing he did not desire to do. There is nothing to show in this evidence that the influence exercised over Mr. Russ by Iva Pullen in any way influenced his testamentary acts. There is no evidence of any specific act or thing that Iva Pullen did which induced Mr. Russ to make the 1933 will. In our opinion the evidence in this case fails wholly to meet the tests required by our courts, and for these reasons we sustain the appellant's contention. Whitney et al. v. Murrie, Tex. Civ.App., 264 S.W. 270; Burgess et al. v. Sylvester et ux., Tex.Civ.App., 177 S.W.2d 271, Id., 143 Tex. 25, 182 S.W.2d 358.

Finally, the appellants challenge the action of the trial court in denying the probate of the proffered will and codicils in the form in which they were originally executed by Mr. Russ. The evidence reveals that the original will at the time of its execution, June 22, 1933, had attached to it eight deeds. These deeds were referred to in the will. At the time the will was proffered for probate only six deeds were still attached, each of which had been properly signed and acknowledged by the testator. In response to the special issues submitted, the jury found that the six deeds now attached to the will were attached on June 22, 1933; and in response to Special Issue No. 15 found that the eight deeds from O. P. Russ, the testator,

636

to Ellis William Russ, Arthur Russ, Paul Russ, Willie Russ, Iva Russ Pullen, Alma Russ Russell, Florence Russ Wasson, and Minnie Russ Howard were attached to the will at the time it was executed. The will shows erasures and interlineations. The jury found that they were made by O. P. Russ prior to March 30, 1940. The jury also found that the two deeds which are not now attached to the will were detached by O. P. Russ, or someone under hi direction, and that he had no intention to destroy his will at the time he detached these two deeds. The words "Florence Russ Wasson" and "Minnie Russ Howard" are partially obliterated by ink and the word "eight" is partially obliterated by pen scratches and above it is written the word "seven," and the word "six" is written over the word "seven." There are other minor changes. In the first codicil dated December 9, 1935, the word "seven" is partially scratched out, and the word "six" is written above it. There are some changes made in two of the deeds. By these changes it can be seen that the testator was attempting to change his will. It is the law in this state that changes in the original will properly executed by the testator are ineffective, and that the will must be probated as originally written unless such changes were made with the formalities required in the making of a will. A will cannot be changed or revoked except in a manner provided by law. If the names of the legatees were obliterated by Mr. Russ, or someone under his direction, after the will was executed, such acts are futile. The evidence shows and the jury found that these changes were made by the testator or under his direction; therefore, the trial court should have admitted to probate the will as it was originally written, with the eight deeds thereto attached, the first codicil dated December 9, 1935, as changed, the second codicil dated August 25, 1936, and the third codicil dated March 30, 1940. No changes were made in the last two codicils. The distinction between the first codicil and the will is to be found in the fact that the codicil is holographic and, therefore does not require the same procedure of execution or revocation as would the original will. Leatherwood et al. v. Stephens et al., Tex.Com.App., 24 S.W.2d 819. Article 8285, Vernon's Annotated Civil Statutes. Since we have held that the will should have been probated in its original form, it is unnecessary to discuss the appellants' remaining point of error.

The judgment of the district court denying the will and codicils to probate is reversed, and the cause is remanded to the court below for disposition in consonance with this opinion.