## FREEMAN v. CHICK.

### No. 10080.

Court of Civil Appeals of Texas. Austin.

Nov. 5, 1952.

Rehearing Denied Nov. 26, 1952.

Vincent W. Harris, Dallas, for appellant.

Earl R. Parker, Dallas, for appellee.

HUGHES, Justice.

This is a will contest. The testator was Wesley D. Freeman who died April 11, 1951, in Dallas County, Texas.

A written instrument was offered for probate as the last will and testament of Wesley D. Freeman by appellee, Willa M. Chick, a sister of decedent and a beneficiary under his will.

A contest to the probate of such instrument was filed by appellant, Martha Lee Freeman, widow of decedent.

The grounds of contest were general, it being alleged only that the instrument of-

fered for probate was not the will of decedent and that it had not been executed in accordance with the requirements of Article 8283, V.A.C.S.

The instrument was probated by the County Court and on appeal by the District Court.

■ Appellant's only assignment is that the District Court erred in finding as a fact that the words "or her heirs if she is deceased," which appear to be interlined in the will, were there when the will was executed by the testator "for the reason that there is insufficient evidence to sustain such finding."

We quote the paragraph of the will in which the interlineation appears:

"To my wife, Martha Lee Freeman, I hereby bequeath a life interest, or until she remarries, my Community interest in Lot 9 Block 3283-36 Dallas, Dallas County, Texas, but when she remarries or at her death, my ½ interest in Lot 9 Block 3283-36 Dallas, Dallas County Texas is to be given to my sister Willa M. Chick or her heirs if she is deceased, and this property to be sold at the time of the remarriage or death of said Martha Lee Freeman, and the estate settled at the time of the remarriage or death of Martha Lee Freeman."

The interlined words appear to be in smaller type than the remainder of the will.

Appellant offered no testimony.

Appellee relied upon the testimony of the two subscribing witnesses to the will.

Neither witness testified to having read the will. Both testified to having seen the will. Each testified to having witnessed it.

The witness Mrs. Bernhard testified, inter alia:

"Q. Mrs. Bernhard, what is your best recollection, does the instrument appear any different now than it did at the time that it was signed? A. It looks just the way it did when I signed it.

"Q. Is your best recollection that that interlineation was there at the time that it was signed? A. As best I can remember, it was there.

" * * * * * *

"Q. Now, your testimony now is that you do not know whether it was there or not? A. The piece of paper is just like I signed it, I am sure, because I don't think anything has been done to that piece of paper as far as I can see.

" * * * * * *

"Q. Well, when you say it looks like the instrument that you signed, you mean it is about the same size? A. No, sir, it looks just about like it did when I signed it.

" * * * * * *

"Q. Does it appear the same as it did? A. Yes, it looks just exactly as it did to me before."

The witness Mrs. Betty Haskins testified, inter alia:

"Q. Now, Mrs. Haskins, to shorten the matter a little bit, there has been some objection to an interlineation in that instrument in probably the blacker type than the other instrument. Do you recall whether that was in there at the time the instrument was signed or not? A. Well, it looks like it did when I signed it. It looks like it did when I was up here at the Court before, and it looks like the same thing today.

" * * * * * *

"Q. What is your best recollection about it? A. That it is just like it was, the way that I remember it. It looks like it did when I signed it.

" * * * * * *

"Q. What is your best recollection as to whether that interlineation was in that instrument at the time that you signed it? A. Well, it looks just like it did when I signed it."

We are satisfied that the finding of the court is amply supported by the evidence.

The fact that the interlined words were in smaller type than the body of the will is capable of an explanation other than

that the words were added after its execution.

The will was signed in the office of the Assessor-Collector of Taxes of Dallas County, an office of considerable size, business and importance and in which one would expect to find numerous typewriters having various sized type. An examination of a photostatic copy of the will shows that the space between the lines where the interlineation was made was too narrow to accommodate interlining with the same size type used in the body of the will. Then, too, the will was written on a single letterhead of the Assessor-Collector of Taxes of Dallas County. This fact augurs against any inference that the instrument was skillfully or carefully drawn or with a view of avoiding contests such as this. Our point is that an interlineation in a will drawn in formal manner by an attorney would be much more suspicious than one made under these circumstances.

Appellant, in her brief, dwells at some length upon the state of the law concerning upon whom the burden of proceeding rests in proving that an interlineation in a will was made before or after its execution, she contending the law to be that the burden is upon the proponent of the will to prove prior insertion.

For our purposes here we may assume appellant to be correct in her statement of the law because, in our opinion, the evidence which we have herein set out is of sufficient probative force to discharge an affirmative duty on appellee's part to prove that the interlineation was made before the execution of the will.

█ For a discussion of the problem of measuring the sufficiency of the evidence to sustain a verdict or finding see Sec. 410, p. 909, Vol. 17, Tex.Jur., and cases there cited. Briefly stated, the evidence must do more than create a surmise or suspicion and must be strong enough to warrant a reasonable belief of the existence of the fact sought to be established.

█ The nature of the fact to be established and the character of proof available should be taken into consideration in weighing the sufficiency of the evidence.

Here the issue relates to the contents of a will—a matter usually of the utmost confidence. As far as the record shows only three persons saw the will at the time of its execution, the testator and the two subscribing witnesses. These two witnesses testified that they saw, but did not read the will, at the time of its execution and that it appeared then as it did when offered for probate. Since we know that witnesses to a will seldom read the instrument or are informed of its contents it is not at all strange that the witnesses would not swear positively that the interlined words were present in the will when witnessed by them. Adding to the weight of their testimony, also, is the fact that the will was contained on one letterhead. If the will had consisted of several pages the testimony that the will appeared to be the same would be of far less probative value. Here, however, it would have been practically impossible for the subscribing witnesses not to have seen the entire instrument when they attested it. Under these circumstances we consider the testimony that the will "looks just the way it did when I signed it" and other similar testimony more than a scintilla of evidence that the interlineation was made before the will was signed.

The judgment of the trial court is affirmed.

Affirmed.