**AIR–PORT EASTHAM BUS CO., Appellant,**

v.

**Leonard O'NEAL, Appellee.**

**No. 14904.**

Court of Civil Appeals of Texas.

Dallas.

March 4, 1955.

Gullett & Gullett and Robert L. Doss, Denison, for appellant.

Bondies & Flahive, Dallas, and Russell L. Dunn, Sherman, for appellee.

YOUNG, Justice.

Appellant's bus and the Ford pickup of O'Neal were involved in a collision on Grand Avenue, a north-south street, at intersection of East Lamar Street, Sherman, with result of damage to both vehicles, suit by the bus company and cross action by O'Neal. On jury trial and verdict in response to special issues, a judgment was rendered that the bus company take nothing; cross plaintiff being accorded a recovery of $325 on findings that (issue 28) the fair cash market value of his truck before the collision was $1,175 and of $850 in value immediately thereafter. Appellant excepted to the submission of issue 28, also the court's refusal to set aside the jury findings thereunder on ground of insufficiency of competent evidence to sustain aforesaid finding of $850 as the reduced value of truck after the collision; duly perfecting this appeal from the court's adverse ruling and judgment.

■ . Physical facts just prior to the collision should first be stated: Both bus and truck had rolled up to the intersection and stopped for a traffic signal light showing red, bus to the left of O'Neal's car and the latter in outside lane or next to street curb line; it developing later that each driver was intending to turn west or right onto Lamar Street. Upon resumption of traffic flow, whether O'Neal's truck had moved at all is in dispute, but not material under jury findings of no negligence on his part. At any rate, the bus moved first, and, in bearing to the right from inside lane of Grand Avenue onto Lamar, a projection near the middle

of bus door came in contact with the truck's left bumper and fender; with result that the truck was dragged on and over the street curb line from its position about twelve inches away from said curb. Extensive views of the truck after the mishap as reflected in numerous exhibits show visible damage thereto in bumper torn away, fender deeply scarred and indented.

Appellee owner of the Ford truck offered but one witness as to its reasonable cash market value at time and place of collision —Don Haralson, a person in the business of buying and selling motor vehicles; and whose testimony relative to value of the truck *before* the collision is not questioned; appellant's several points relating alone to the jury finding of $850 as its reduced value after the collision; in other words, lack of competent evidence (or insufficient evidence) in support of the jury finding of $325 as resulting damage to the car.

All material testimony of this witness on the issue will be here quoted: On direct examination by Mr. Dunn:

"Q. I'll ask you, Mr. Haralson, if you know of any accident that 1951 pickup truck was involved in on or about April 30, 1952? A. Well, I remember an accident that the pickup had, I don't remember exactly when it was.

"Q. All right. I'll show you plaintiff's exhibit No. 7 and ask you if you recognize the front end of that Ford pickup in that picture? A. Yes, sir.

"Q. Is that the truck you say you are familiar with owned by Leonard O'Neal? A. If it was not his truck, it is one like it.

"Q. I'll ask you if you saw that particular truck in your garage, motor company, after it had been damaged? A. Yes, sir.

"Q. I'll ask you if that particular picture, plaintiff's exhibit No. 6, portrays any damage to the right front end of the Ford pickup that you say you

saw, owned by Mr. O'Neal? A. What do you speak of as the right front end?

"Q. Excuse me. The left front end, Don. A. Yes, sir.

"Q. The left front end. Does that show the damage? A. That's right.

"Q. I'll ask you to tell the jury what the reasonable cash market value of this 1951 Ford pickup was in Sherman, Grayson County, Texas, immediately before April 30, 1952, or the date on which this accident happened? A. Approximately 1175 to 12 and a quarter.

"Q. I'll ask you to tell the jury what the reasonable cash market value of this car was in Sherman, Grayson County, Texas, immediately after it had been involved in that accident? A. Oh, approximately 8 to 8 and a half.

"Q. All right, sir. I'll ask you whether or not you sold this car to Mr. O'Neal? A. Yes, sir.

"Q. Do you remember the approximate date, or do you remember when you sold it to him? A. No, sir. He gave me the check for it though."

On cross-examination by Mr. Alex Gullett: "Q. What damage was done to that car? A. Sir, I can't tell you. I can probably rake up a copy of the estimate on it.

"Q. Are you predicating your answer here on the estimate of the repairs or the fair cash market value? A. The fair cash market value actually, I imagine.

"Q. You tell me, just what damage was done to that car as revealed by that picture? A. Sir, that is pretty hard to say. Right here the fender is evidently damaged. The front end is apparently damaged on the car. But there could be lots of other things that is wrong with it that is hidden damage in a car wreck.

"Q. Will you show me anything that you can see from that picture that would cause that car to be worth $400 less after that accident than it was before? A. Repeat the question.

"Q. Will you show me anything in that picture that would lead you to make the statement that that car was worth $400 less after the accident than it was before? A. Well, I mean it is the same thing. In other words, would you buy a wrecked car?

"Q. I am not buying cars. I just asked you the question. A. Well, I would—I mean the car in the shape it is in, would be worth less money, yes.

"Q. You put new fenders on cars every day, don't you? A. Yes, sir.

"Q. You put new bumpers on cars every day? A. Yes, sir.

"Q. The only thing shown damaged in there is that fender and the bumper, isn't it? A. All right, it looks to me like the wheels is bent in this picture.

"Q. All right, that is what I asked you awhile ago. What else? A. The wheel looks like it is turned under.

"Q. All right. A. Certain visible damage and hidden damage is two different things.

"Q. Do you see $400 worth of damage on this car there? A. I couldn't say whether it was $400 worth by this picture or not.

"Q. But you say the fair cash market value of that car after that wreck had depreciated $400. Is that what you are telling this jury? A. I don't think it was quite $400, was it?

"Q. Well, you said it was from 1175 to 12 and a quarter and was worth anywhere from 8 to 850 afterwards. That is $400. You said that accident that truck had out there depreciated the value of it $400. You tell that jury that, Mr. Haralson? A. Yes, sir."

And on re-direct examination: "Q. Mr. Haralson, let me ask you a question or two. Do you estimate damage to a car by pictures or by looking at them? A. Sir, I couldn't estimate damage to a car by a picture at all. Q. I'll ask you if you recall whether or not you checked the frame of this automobile after the accident? A. Sir, at the present time I couldn't say." Appellant's bus was 29 feet long, weight 10,200 lbs; appellee moving his pickup truck out of contact with bus after the mix-up.

Manifestly, the foregoing testimony, viewed most favorably from standpoint of appellee, constitutes a wholly insufficient predicate for the jury verdict of $325 as the reduced value of his property following the pictured collision. Mr. Haralson testified to no subsequent examination of the truck, simply that he saw it. To the question of damage done to the car, other than visible (bumper and fender), he answered: "Sir, I can't tell you. I can probably rake up a copy of the estimate" on it. From an exhibit, it appeared to the witness that the left front wheel looked "like it is turned under"; yet admitting inability to estimate damage to a car "by a picture at all". To a further question as to extent of damage, he said: "But there could be lots of other things that is wrong with it that is hidden damage in a car wreck"; yet he could not recall having examined the automobile frame or under-carriage after the accident.

Obviously the inference of this witness that the pickup truck had sustained "hidden damage" in the collision was the basis of his figures substantially reducing its value. But with no facts in evidence to warrant any such conclusion, the jury estimate of damage other than to bumper and fender could be arrived at only through speculation and conjecture. "To sustain jury's verdict or trial court's fact finding, evidence must do more than create surmise or suspicion and must be strong enough to warrant reasonable belief that fact sought to be established existed." Freeman v. Chick, Tex.Civ.App., 252 S.W. 2d 763, syl. 2, error dis. "Where probative force of evidence is so weak that it raises

only a surmise or suspicion of existence of fact sought to be established, the evidence is no 'evidence' at all in legal contemplation, and will not support a finding which comprehends the existence of the disputed fact." Houston Fire & Casualty Ins. Co. v. Biber, Tex.Civ.App., 146 S.W.2d 442, syl. 5, error dis., judg. cor.

For lack of competent evidence of "hidden damage" and its effect on the value of the truck in question, the cause must be reversed and remanded for another trial.