**In re ESTATE OF Santiago (Jimmy) Navarro FLORES, Deceased.**

**No. 13-00-00601-CV.**

Court of Appeals of Texas, Corpus Christi.

March 28, 2002.

Bradley Merrill Bunting, Corpus Christi, for Appellant.

Andrew M. Greenwell, Harris & Greenwell, Bob J. Spann, Bob J. Spann & Associates, James T. Clancy, Scott L. Sherman, Shannon M. Wilde, Matthews & Branscomb, Corpus Christi, for Appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and CASTILLO.

## OPINION

HINOJOSA, Justice.

This is an appeal from the trial court's order granting the motion for summary judgment of appellee, Rosa M. Flores. In a single issue, appellant, Roman Flores, contends the trial court erred in granting the motion for summary judgment. We affirm.

### A. Background

It is undisputed that appellant is the son of Santiago (Jimmy) Navarro Flores and Aurora De Luna, who were never married to each other. Appellant was born on November 3, 1968. In 1981, Jimmy filed a legitimation suit in the district court of San Patricio County, seeking to have appellant judicially declared his son. The district court granted Jimmy's request and changed appellant's last name to Flores. Jimmy married appellee in 1984.

Jimmy died on December 20, 1997, at the age of seventy-two. On February 10, 1998, the County Court at Law of San Patricio County issued an order probating Jimmy's will, dated July 9, 1993, and appointing his son, William C. Flores, as independent executor of the estate. In the will, Jimmy stated that: (1) he was married to appellee; (2) he had four living children: (a) William, (b) David Uvaldo Flores, (c) Rita Sanjinez Flores, and (d) Sergio Eduardo Flores; and (3) he had no deceased children. The will bequeathed "all property, real, personal and mixed acquired by me from March, 1984, to the present" to appellee, and "all property, real, personal and mixed acquired by me prior to March, 1984" to William, David and Rita, "share and share alike." The residue of the estate was bequeathed to appellee, if she survived Jimmy, or to William, David and Rita if appellee predeceased Jimmy. Appellant was not mentioned in the will.

### B. The Will Contest

On January 6, 2000, appellant filed a will contest, asserting that: (1) the 1993 will was not a lawful and valid will, and that it was "not executed with the formalities and solemnities required by the Texas Probate Code;" (2) the 1993 will was a forgery and had been altered; and (3) alternatively, the 1993 will was executed while Jimmy was mistaken as to its contents. Appellant later amended his petition to assert that Jimmy lacked testamentary capacity when he signed the will, and that the will was "procured by misrepresentation or fraud."

Under all these theories, appellant asserted that: (1) the 1993 will was invalid and not entitled to be probated, (2) therefore, Jimmy died intestate, and (3) as Jimmy's natural child, appellant was entitled to a share of the estate under the rules of intestacy.

### 1. *Appellee's Motion for Summary Judgment*

Appellee filed a motion for summary judgment, on both "traditional" and "no-evidence" grounds, asserting that the will was self-proving and was properly admitted to probate, and that appellant had no evidence that the will was not properly executed, that it had been forged or altered, that Jimmy was mistaken as to the contents of the 1993 will or that he lacked testamentary capacity when he signed it, or that the signing of the will had been procured by misrepresentation or fraud.

### 2. *Appellant's Response*

Appellant filed a response restating his theories of forgery, lack of proper formalities, mistake or misrepresentation, and lack of testamentary capacity. He attached the following evidence:

(1) the expert report of Carol Ritter, a questioned document examiner, which states that the typing in the will "shows no evidence of alteration, but the first two pages have only three sets of staple holes while pages three through ten have four or five sets, indicating that pages one and two were substituted later." Ritter also opines that "the full signatures of Mr. Flores on pages eight and ten of the questioned will and the initials on pages three through ten are genuine. The initials on pages one and two appear to be genuine but were not written at the same time as the others;"

(2) his own affidavit;

(3) records from the voluntary legitimization procedure in 1981; and

(4) several photos and letters from Jimmy.

Appellant later filed the following evidence:

(5) the affidavit of Rosie Dominguez, which states that Jimmy told her in 1996 that he had left property in his will to appellant, and that appellee had access to the will after Jimmy's death;

(6) the affidavit of Jesus Munoz, which states that Jimmy told him in 1996 that he had left property in his will to appellant;

(7) his own revised affidavit; and

(8) the affidavit of his mother which states that she had seen appellee removing papers from Jimmy's office late one night just after Jimmy's death.

### 3. *The Court's Order*

The judge granted the motion on "no-evidence" grounds. The order states, in relevant part, as follows:

... [on the issue that the will was not executed with the necessary formalities and solemnities] The evidence submitted by the Contestant creates no more than a surmise or suspicion and does not raise any issues of material fact.... The summary judgment evidence produced by the Contestant fails to present more than a scintilla of probative evidence to raise a genuine issue of material fact regarding pages 1 and 2 being forgeries ... Contestant ... offers no probative evidence that decedent was mistaken as to the contents of the will.... Evidence presented creates no more than a mere surmise or suspicion of lack of testamentary capacity.... Contestant presents

no probative evidence of misrepresentation or fraud.

After careful review of all probative evidence and weighing every reasonable inference in favor of the non-movant, the Court finds that the evidence is mere speculation, surmise and suspicion and does not rise to the level that would enable reasonable and fair-minded people to differ in their conclusions. Summary judgment shall be granted on all issues.

## C. STANDARD OF REVIEW FOR "NO–EVIDENCE" MOTION FOR SUMMARY JUDGMENT

■ When a motion for summary judgment is presented under Texas Rule of Civil Procedure 166a(i) asserting there is no evidence of one or more essential elements of the nonmovant's claims upon which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.—Dallas 2000, no pet.); *Lampasas v. Spring Ctr., Inc.*, 988 S.W.2d 428, 432–33 (Tex.App.—Houston [14th Dist.] 1999, no pet.); *see also* TEX. R. CIV. P. 166a(i). Instead, the burden then shifts to the nonmovant to present enough evidence to be entitled to a trial: evidence that raises a genuine fact issue on the challenged elements. *See* TEX. R. CIV. P. 166a cmt. If the nonmovant is unable to proffer enough evidence, the trial judge must grant the motion. *Lampasas*, 988 S.W.2d at 433.

■ A "no-evidence" summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Zapata v. The Children's Clinic*, 997 S.W.2d 745, 747 (Tex.App.—Corpus Christi 1999, pet. denied). Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983); *Zapata*, 997 S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner*, 953 S.W.2d at 711; *Zapata*, 997 S.W.2d at 747.

## D. BURDEN OF PROOF IN WILL CONTESTS

■ A will proponent has the burden of proof in the initial probate proceeding. *Renn v. Samos*, 33 Tex. 760, 764–65 (1871); *Gasaway v. Nesmith*, 548 S.W.2d 457, 459 (Tex.App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.); *see also* 17 TEX. PRACTICE § 394 (West 1971). After a will has been admitted to probate, any interested person may sue to contest the validity of the will. TEX. PROB. CODE ANN. § 93 (Vernon Supp. 2002).

■ After the will has been admitted to probate, the burden of proof is on the contestant to show by a preponderance of the evidence that the will is invalid. *See Williams v. Hollingsworth*, 568 S.W.2d 130, 132 (Tex.1978); *Lee v. Lee*, 424 S.W.2d 609, 610 n. 1 (Tex.1968); *Horton v. Horton*, 965 S.W.2d 78, 85 (Tex.App.—Fort Worth 1998, no pet.); *Wright v. Wolters*, 579 S.W.2d 14, 16 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.). A solemn testament executed under the formalities required by law by one mentally capable of executing it should not be set aside upon a bare suspicion of wrongdoing. *Estate of Davis v. Cook*, 9 S.W.3d 288, 293 (Tex.App.—San Antonio 1999, no pet.); *Garza v. Garza*, 390 S.W.2d 45, 47 (Tex. Civ.App.—San Antonio 1965, writ ref'd n.r.e.)

### E. LACK OF TESTAMENTARY CAPACITY

In a will contest filed after the will is admitted to probate, the burden of proof is on the party contesting the will to establish that the testator lacked testa-mentary capacity. *Lee,* 424 S.W.2d at 610 n. 1; *Horton,* 965 S.W.2d at 85. Proof of testamentary capacity requires a showing that at the time the will was executed, the testator had sufficient mental ability: (1) to understand the business in which he was engaged (the making of the will); (2) to understand the effect of the will; (3) to understand the general nature and extent of his property; and (4) to know the natural objects of his bounty and the claims upon them. *Horton,* 965 S.W.2d at 85; *Tieken v. Midwestern State Univ.,* 912 S.W.2d 878, 882 (Tex.App.—Fort Worth 1995, no writ). The testator must also have had sufficient memory to collect in his mind the elements of the business to be transacted and hold them long enough to form a reasonable judgment about them. *Horton,* 965 S.W.2d at 85; *Tieken,* 912 S.W.2d at 882.

The proper inquiry is whether the testator had testamentary capacity on the day the will was executed. *Lee,* 424 S.W.2d at 611; *Horton,* 965 S.W.2d at 86. To successfully challenge a testator's mental capacity with circumstantial evidence from time periods other than the day on which the will was executed, the contestant must first establish that the evidence offered indicates a lack of testamentary capacity. *Croucher v. Croucher,* 660 S.W.2d 55, 57 (Tex.1983); *Horton,* 965 S.W.2d at 85. In addition, he must also demonstrate that the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed, and the evidence provided must be of a satisfactory and convincing character; probate will not be set aside on the basis of evidence that creates only a suspicion of mental incapaci-ty. *Horton,* 965 S.W.2d at 85; *Lee v. Lee,* 413 S.W.2d 931, 934 (Tex.Civ.App.—Fort Worth 1967), *aff'd in part, rev'd on other grounds in part,* 424 S.W.2d at 609.

In the instant case, the record contains no evidence that Jimmy lacked testamentary capacity on the day the will was executed. In fact, the record contains no evidence that Jimmy lacked capacity at any time during his lifetime. We hold the trial court did not err in granting summary judgment on this issue.

### F. FORGERY

The act of forgery is defined as altering, making, completing, executing, or authenticating a writing so that it purports to be the act of another who did not authorize that act. *See Parker v. State,* 985 S.W.2d 460, 463 (Tex.Crim.App.1999); *see also* TEX. PEN. CODE ANN. § 32.21(a)(1) (Vernon Supp.2002). Appellant had the burden of showing the probated will was a forgery. However, appellant's own expert concluded that the initials on each page of the will, and the signatures at the end of the will are authentic.

The trial court concluded that there was less than "a scintilla of probative evidence to raise a genuine issue of material fact regarding pages 1 and 2 being forgeries." We agree, and hold that the trial court did not err in granting summary judgment on this issue.

### G. MISTAKE AS TO CONTENTS OF WILL

Appellant also contended that Jimmy was mistaken as to the contents of the will when he signed it. A competent testator is presumed to know and understand the contents of the testamentary instrument he has signed, unless circumstances exist that cast suspicion on the issue. *Boyd v. Frost Nat'l Bank,* 145 Tex. 206, 196 S.W.2d 497, 507 (1946); *Gilkey v. Allen,* 617 S.W.2d 308, 311 (Tex.App.—

Tyler 1981, no writ). Appellant points to the inclusion in the will of a statement that Jimmy had no other children, living or dead, besides those named in the will, and adduced evidence of the birth of a daughter to Jimmy and his wife in 1956; this child died at the age of one month. While this evidence may be relevant to the issue of mistake as to the fact of the deceased child, it does not constitute evidence of mistake of fact regarding the crux of this case, Jimmy's intent to disinherit appellant.

██ Appellant also points to the affidavits of two witnesses, Rosie Dominguez and Jesus Munoz, which state that Jimmy told them in 1996, some three years after the signing of the will in 1993, that he had left property in his will to appellant. However, appellant adduced no evidence concerning Jimmy's intent, if any, to leave property to appellant on the date of the execution of the will. We agree with the trial court that the affidavits of Dominguez and Munoz do not constitute probative evidence; they are not probative as to the relevant date, and amount to no more than a bare suspicion of wrongdoing. *See Estate of Davis*, 9 S.W.3d at 293. We hold the trial court did not err in granting summary judgment on this issue.

### H. Misrepresentation or Fraud

The record contains no evidence of misrepresentation or fraud in the procurement of the will. We hold the trial court did not err in granting summary judgment on this issue.

### I. Lack of Necessary Formalities and Solemnities

██ Appellant argues that his expert's opinion that the first two pages of the will could have been initialed at different times, and her finding that there were different numbers of staple holes in different pages of the will is evidence that new pages were substituted after the will was signed. Appellant further argues that these changes were made without the formal requisites of a will, that the altered will is therefore void, and that Jimmy's estate must therefore pass by the rules of intestacy.

██ Alterations or interlineations made on a will before it is signed and witnessed are valid. *Schoenhals v. Schoenhals*, 366 S.W.2d 594, 599 (Tex.App.—Amarillo 1963, writ ref'd n.r.e.); *Freeman v. Chick*, 252 S.W.2d 763, 765 (Tex. Civ. App.—Austin 1952, dism'd w.o.j.). However, changes made by a testator after the will has been signed and witnessed are of no effect; the will must be probated as originally written unless the changes were made with the formalities required for the making of a will. *Goode v. Estate of Hoover*, 828 S.W.2d 558, 559–60 (Tex.App.—El Paso 1992, writ denied); *Pullen v. Russ*, 209 S.W.2d 630, 636 (Tex.Civ.App.1948, writ ref'd n.r.e.); *Leatherwood v. Stephens*, 13 S.W.2d 726, 729 (Tex.Civ.App.—Waco 1929), *aff'd*, 24 S.W.2d 819 (Tex.Comm. App.1930).

However, appellant has adduced no evidence that any possible alteration of the will was made after it was formalized; such changes, if any, are just as consistent with having been made before signing as they are with having been made after the will was signed. We hold the trial court did not err in granting summary judgment on this issue.

We affirm the trial court's order granting appellee's motion for summary judgment.