**PULLEN et al. v. RUSS et al.**
No. 15095.

Court of Civil Appeals of Texas.
Fort Worth.
Jan. 20, 1950.

Rehearing Denied Feb. 17, 1950.

H. H. Smith, of Panhandle, Underwood, Wilson, Sutton, Heare & Boyce, and Clayton Heare, all of Amarillo, for appellants.

Hugh L. Umphres, Jr., of Amarillo, George Sergeant, of Dallas, Sanders, Scott, Saunders & Smith, and Albert Smith, all of Amarillo, for all appellees except Presbyterian Home for Children, Amarillo, Tex.

Stone & Stone and R. A. Stone, all of Amarillo, for appellee Presbyterian Home for Children, Amarillo, Tex.

McDONALD, Chief Justice.

On September 15, 1928, Laura I. Russ executed a will which was probated following her death in 1929. The will provided in substance as follows: (1) Payment of debts. (2) Bequest of all property after payment of debts to her husband O. P. Russ if he should survive her. (3) Bequest of her property, if her husband should predecease her, to named persons and benevolent institutions. (4) Appointment of executor. (5) Appraisement of certain properties and option of designated persons to purchase at appraised prices. (6) Administration independent of probate court. (7) The seventh and last numbered paragraph of the will read as follows:

"My said husband, O. P. Russ, is making a will containing the same provisions as this

and it is our mutual desire and I direct that should it so happen that we should both die at the same time, or so nearly the same time, that it could not be told which is the survivor, that the legatees named in our wills shall take only one bequest as though one of us had survived the other."

O. P. Russ died in 1945. By proceedings which included the decision reported in Pullen v. Russ, Tex.Civ.App., 209 S.W.2d 630, writ ref. n. r. e., there was probated as the last will of O. P. Russ an instrument dated June 22, 1933.

Some of those who were named as beneficiaries under the third paragraph of Mrs. Russ' will brought the present suit. Defendants included the beneficiaries named in the will of Mr. Russ executed in 1933 and the executors of his estate. Plaintiffs' claim is that Mr. Russ and Mrs. Russ both executed wills on September 15, 1928, Mr. Russ' will being similar to the aforementioned will of Mrs. Russ except that she was the beneficiary under his will exactly as he was the beneficiary under her will; that their wills were executed pursuant to an agreement between them to dispose of their property in the manner provided for in said wills; and that he caused her will to be probated and took under it. Plaintiffs say that under such circumstances Mr. Russ became bound and obligated, after Mrs. Russ had died and he had caused her will to be probated and had taken under it, to leave his property as provided for in the will which he executed on September 15, 1928, and that plaintiffs are entitled to have a trust impressed on Mr. Russ' estate to bring about such result.

The jury found, in response to the two special issues submitted to them, that Mr. Russ executed a will similar to Mrs. Russ' will on September 15, 1928, and that the two wills were executed pursuant to an agreement between them to dispose of their property in the manner set out in such wills. If the verdict is upheld, the beneficiaries named in the third paragraph of Mr. Russ' will (being the same persons, of course, who were named in the same paragraph of Mrs. Russ' will) are entitled in equity to recover the estate which Mr. Russ agreed to leave to them. Pullen v. Russ, supra, and cases there cited.

The trial court rendered judgment on the verdict in favor of plaintiffs, and defendants have appealed, presenting twenty-two points of error under which are raised the questions herein discussed.

■ We overrule appellees' contention that the two wills are sufficient, by themselves, to show that they were executed pursuant to such a contract. Except for the seventh paragraph, which we shall discuss, the wills themselves show no more than the facts that they are similar and were executed at the same time. Except for the seventh paragraph, the wills do not respectively purport to dispose of the entire estates of both parties, but only that of the testator, nor does either will purport to dispose of the estate held by the survivor at his death. Nye v. Bradford, 144 Tex. 618, 193 S.W.2d 165, 169 A.L.R. 1; Wagnon v. Wagnon, Tex.Civ.App., 16 S.W.2d 366, writ ref.; Curtis v. Aycock, Tex.Civ. App., 179 S.W.2d 843, writ ref. w. o. m.

The bequests in the third paragraph of the wills were conditioned on the death of the opposite spouse before the testator died. The seventh paragraph provided for a contingency not elsewhere provided for in the wills, to-wit, the simultaneous death of the spouses. The provisions of the seventh paragraph did not purport to be a disposition of property left in the hands of a survivor at his death. The recital that the other spouse was executing a similar will did not make the wills contractual, because it was no more than the statement of a fact which, under the decided cases, was not enough to make the wills contractual.

■ But the similarity of the wills and the fact of execution at the same time and place and before the same witnesses are facts which may be considered along with other evidence in determining whether or not the wills were executed pursuant to an agreement. Also, evidence of declarations of the testator (in this case Mr. Russ) is admissible to prove such fact. Nye v. Bradford, supra, and other authorities there cited, including particularly Plemmons v.

880

Pemberton, 346 Mo. 45, 139 S.W.2d 910. McClure v. Bailey, Tex.Civ.App., 209 S.W. 2d 671, writ ref. n. r. e., cited by appellees, cannot be accepted as authority for the proposition that declarations of the testator are incompetent to prove that the wills were executed pursuant to an agreement, in view of the pronouncement in Nye v. Bradford.

█ We think that the parol testimony, coupled with the provisions of the wills, they being consistent with the theory that the wills were executed pursuant to an agreement between Mr. and Mrs. Russ to dispose of their property in the manner therein set out, is sufficient to support the verdict. Mr. McCallister testified that he knew Mr. and Mrs. Russ. That Mr. Russ called him into the office of Mr. H. H. Smith, an attorney, and asked him to witness the wills of Mr. and Mrs. Russ on the date mentioned and that he, along with Mr. Smith, did witness the wills. He did not read them, but he testified as an attesting witness when Mrs. Russ' will was probated. He was asked, "State whether or not Mr. Russ said anything about an agreement between himself and Mrs. Russ concerning the disposition of their property after their death?" and answered, "Yes, he did discuss it but as I was not directly interested in it, it would be hard for me to recall the exact words after so long a time." Three others who knew Mr. Russ also testified. Mr. Meaker said that Mr. Russ told him that he and his wife had "gone into a contract and had made a will," that they were to give a certain amount to a religious institute and a certain amount to an orphans home in Amarillo. Mr. Heaston had a discussion with Mr. Russ in 1930 or 1931 in which Mr. Russ told him that he and his wife had each made a will leaving the property to the survivor and on death of the survivor to the children. Mr. Welch said that Mr. Russ told him that he and his wife had talked the matter over relative to disposition of their property and had definitely agreed on what disposition was to be made of it and that they had it fixed. There is no evidence that Mr. and Mrs.

Russ executed any other wills prior to her death.

█ As announced in the cases above cited and in many others, the proof must be clear and convincing in order to justify the invocation of the equitable remedies herein pursued. The jury were the judges of the credibility of the witnesses. Accepting their stories as true, as we must, and considering the pattern of the two wills and the recitals in them, we hold that the evidence is sufficient to meet the applicable test.

█ Citing Graser v. Graser, 147 Tex. 404, 215 S.W.2d 867, appellants say that there was no proof that Mr. Russ executed a valid will in 1928, that is to say, that he signed a will with the formalities required by law and that he had mental capacity to make a will. Except in a proceeding to probate a will, the usual presumption is that a person is sane until it is proven otherwise. 17 Tex.Jur. 265; Fulcher v. Young, Tex.Civ.App., 189 S. W.2d 28, writ ref. w. o. m. There is neither pleading nor proof that Mr. Russ was not mentally competent, and all of the evidence in the record points convincingly to the conclusion that he was mentally competent. He amassed a sizeable estate. All of the witnesses indicated respect for him. He was appointed executor of Mrs. Russ' estate in 1929. The probate of his 1933 will constituted an adjudication that he was mentally competent when he signed it. Graser v. Graser, supra. Mr. McCallister testified without objection that he and Mr. Smith "witnessed" the two wills. Mr. Smith was one of the attorneys representing appellants in the trial of the present case, being present at the trial, and offered no testimony to rebut the clear implications of the testimony of Mr. McCallister that the will was signed and witnessed as required by law. The evidence further showed that Mr. Smith, as attorney for Mr. and Mrs. Russ, prepared the 1928 wills for them and that they were signed in Mr. Smith's office. The contention thus raised by appellants is overruled.

The first special issue inquired if Russ executed a will on September 15, 1928, containing the same provisions as Mrs. Russ' will except that Mrs. Russ was named and referred to where Mr. Russ was named and referred to in her will.

The second issue, which was required by the court's instructions to be answered only in the event of an affirmative answer to the first issue, read as follows:

"From the greater weight of the evidence introduced in your hearing, do you find that O. P. Russ and Laura I. Russ on the 15th day of September, 1928, executed their wills pursuant to an agreement between them to dispose of their property in the manner set out in such wills?"

Appellants level four objections at the second issue: (1) The issue was multifarious. (2) It was a charge on the weight of the evidence. (3) It failed to place the burden of proof on the plaintiffs. (4) It was misleading and confusing to the jury.

 There was no objection made in the trial court to the issue on the ground that it was misleading and confusing to the jury, hence such an objection cannot be raised on appeal. Furthermore, we do not consider the language or form of the issue misleading or confusing.

 Although it is declared in the point of error that the issue failed to place the burden of proof on the plaintiff, there is neither argument nor authority in support of the complaint set out under the point of error, nor does it appear to us that the issue is subject to this complaint. The expression found in the issue does not seem to us to be materially different in meaning, if different at all, from the accepted phrase "from the preponderance of the evidence."

 Nor do we think that the issue is subject to the objection that it is multifarious, nor that it is a comment on the weight of the evidence. It was established by the answer to the first issue that Mr. Russ executed a will, etc., on September 15, 1928, and it was undisputed that Mrs. Russ executed her will on that day. The objection made in the trial court concern-

ing multifariousness was that the issue inquired if there was an agreement between Mr. and Mrs. Russ concerning disposition of their property and also inquired if such agreement was to dispose of their property in the manner set out in their wills. The objection may not be enlarged upon on appeal.

 An issue inquiring if there was an agreement, without stating in the issue what agreement was being inquired about, would have been an immaterial one. The material issue was whether there was an agreement to dispose of property in a specified manner. The ultimate issue may consist of two or more subsidiary facts, which, at least in some instances, may be properly grouped. Howell v. Howell, 147 Tex. 14, 210 S.W.2d 978. Speaking of special issues, it was said in Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S. W.2d 314, 317: "Practically speaking there is no absolutism in procedure, especially in that branch of the trial procedure having to do with submitting causes upon special issues." The court also said, "The form of the special issues employed in submitting each case to the jury must depend in some measure at least upon its own peculiar pleadings and evidence and the practical difficulties the trial judge is faced with in ascertaining, through special issues, the essential facts * * *". The holdings of our courts with respect to grouping of facts in an issue are not altogether harmonious, and some of them may seem to go so far as to declare that any issue which inquires as to more than one fact is objectionable, but there have been many issues submitted, and held to be unobjectionable, which did contain inquiries as to more than one fact. Howell v. Howell, supra, presents an example of such. See Trial-Civil Cases, Sections 276-277, in 41 Texas Jurisprudence, and in 9 Tex.Jur. Ten Year Supp., for numerous other examples of permissive grouping. At least as against the objection made in the trial court, there was no erroneous grouping of facts in the second issue.

 As to the alleged comment on the weight of the evidence, the objection made in the trial court was that the issue as-

sumed that an agreement was made concerning the disposition of property and that the charge as framed merely inquired as to whether or not such agreement was to dispose of their property in the manner set out in the 1928 wills. We do not see how the jury could reasonably have understood from the issue that it was assumed that Mr. and Mrs. Russ had made an agreement concerning their property, and that the only question addressed to the jury was whether the assumed agreement was to dispose of their property in the manner set out in said wills.

The complaints of multifariousness in the second issue and of comment on the weight of the evidence go further in the briefs than did the objections made to the charge in the trial court, but we are limited to the objections made in the trial court. We do not intend to say that we consider good the objections made in the briefs, but we do hold that the objections as made in the trial court do not present reversible error. For the sake of clarity of submission, it may be the better practice in some instances, as in negligence cases, for example, to break up the ultimate fact inquiry into two or more issues, while in other instances, as in the situation involved in Howell v. Howell, where the cruel treatment inquiry in a divorce case was submitted in a single issue, it may make for a better submission of the case to the jury to embrace in a single issue all of the subsidiary facts which go to make up a single ultimate ground of recovery or of defense. Care should be exercised not to employ a method of submission which will be confusing or misleading to the jury, and the issue ought not to be worded in such way that it will amount to a comment on the weight of the evidence, nor in such way as to lead the jury to believe that a controverted fact is assumed.

Although the objections made in the trial court do not support such complaint, appellants say that the second issue either inquired as to two separate facts, that is to say, whether or not Russ and wife made the agreement mentioned, and whether or not they executed their wills pursuant to such agreement, or else

the issue assumed the fact that they made such agreement, and inquired only whether or not they executed their wills pursuant to the agreement. We do not believe that even this enlarged complaint presents reversible error. In view of the finding in answer to the first issue and the undisputed fact that Mrs. Russ executed her will, the real inquiry presented in the second issue, looking to its substance rather than taking a narrow view of its form, was whether or not these people made the alleged agreement. If they made such an agreement, and if they executed the wills agreed on, then the case is made out without inquiring further of the jury whether or not the wills were executed pursuant to the agreement. The making of the agreement, and the execution of the wills, is enough to lay the basis for the claim now being pursued, where the survivor caused the will of the deceased to be probated and took under it.

Against the background of the pleadings, the fact found in answer to the first special issue, and the facts which were not in dispute, the language and form of the second special issue constituted a clear, relevant, and common-sense method of ascertaining a jury finding on an ultimate issue in the case.

Appellants objected to the first special issue on the ground that the court should have inquired specifically as to Mr. Russ' testamentary capacity and also whether he executed the will before the required witnesses. We do not see that there was any dispute in the evidence about these two matters. There is not a hint of mental incompetence, and Mr. McCallister testified without contradiction that he and Mr. Smith witnessed both wills. The point is overruled. Besides, we doubt if plaintiffs, claiming the very property which Mr. Russ took under his wife's will, are in position to dispute the recital in her will to the effect that she and Mr. Russ were executing similar wills. We do not consider that the holding we now make conflicts with the decision in Graser v. Graser, 147 Tex. 404, 215 S.W.2d 867.

The sixth, seventh and eighth points of error, complaining of the admission of

testimony of the witnesses named earlier in this opinion concerning declarations of the testator which tended to show that he and Mrs. Russ agreed to execute the wills, etc., are overruled in view of what has already been said in this opinion.

The ninth and tenth points, complaining of the overruling of exceptions to the plaintiffs' petition, do not, in our opinion, present reversible error.

█ The eleventh, twelfth, thirteenth and fourteenth points of error complain of the refusal of the court to submit certain requested special issues. It is our view that the issues which were submitted presented in substance the same inquiries as those contained in the requested issues. If the requested issues were intended to be submitted as defensive issues, there were no pleadings sufficient to support their submission as defensive issues.

█ The fifteenth point complains of the refusal of the court to give the jury an instruction defining the word "agreement" used in the second issue. It was held in Griffin v. Cawthon, Tex.Civ.App., 77 S.W. 2d 700, writ refused, that it was not error to refuse to define the word "understanding" and we think that the present complaint likewise fails to present reversible error.

The sixteenth point complains of the refusal to submit two requested special issues which presented to the jury the same inquiries that were presented in the two issues which were submitted by the court. The point is overruled.

The seventeenth point complains of the refusal of the court to submit an issue inquiring whether the contract to make identical wills, if any, was executed prior to September 15, 1928. We think that this inquiry was contained in substance in the issues submitted by the court.

The eighteenth point complains of the refusal to submit an issue inquiring whether the sole and only binding agreement, if any, was that Mr. and Mrs. Russ would make wills leaving his or her property to the other. We do not see that the evidence raised such an issue.

█ In response to several of the points of error which complain of the refusal of the court to submit an issue or an instruction, appellees contend that the assignment in the motion for new trial was insufficient in that it complained, for instance, only of the refusal of the court to give a numbered special issue or instruction. The form of assignment of error employed by appellants in their motion for new trial, to-wit, complaining of the submission or of the refusal to submit a designated issue or instruction, has been approved at least since the time of Clarendon Land Investment Agency Co. v. McClelland, 86 Tex. 179, 23 S.W. 576, 1100, 22 L.R.A. 105, in which case (23 S.W. 1100, 1103) the Supreme Court undertook to settle the confusion then existing in the minds of the attorneys, and said that "Where an assignment of error is sufficiently specific to enable the court to see that a particular ruling is complained of, it should be held good, although it should fail to state the reason why such ruling is claimed to be erroneous." In Green v. Hall, Tex.Com.App., 228 S.W. 183, 184, the following assignment of error was held to be sufficient: "The court erred in failing and refusing to submit to the jury special issue No. 4, requested by defendants and interveners." Reference is also made to the opinions in Lang v. Harwood, Tex.Civ. App., 145 S.W.2d 945, and Southern Underwriters v. Samanie, 137 Tex. 531, 155 S.W. 2d 359. Opinions may be found which indicate that an assignment complaining of the giving or refusing of a requested issue or instruction is insufficient unless the assignment further sets out why the issue or instruction should have been given or refused, but it is our opinion that the assignment is sufficient as to form where it merely recites that the court erred in giving or refusing a particular issue or instruction. For comprehensive discussion and citation of authorities see 3-B Tex.Jur.(rev.), Appeal and Error, section 714.

█ Under the last three points of error it is charged that the trial court erred (1) in taking the assets of Mr. Russ' estate from the possession and control of the duly appointed and acting executors and placing

them in the hands of trustees appointed by the court; (2) in appointing the two persons who were executors as trustees and in requiring them to execute a bond in the amount of $50,000 and to carry out the orders of the district court as trustees; and (3) in appointing trustees of the estate.being administered by the executors and in requiring the trustees to distribute the estate in accordance with the judgment of the district court.

The only proof in the record, consisting of reports filed by the temporary administrator and reports filed by the executors, indicates that all debts of the estate have been paid. The purpose of this suit is to invoke the extraordinary remedies of a court of equity to bring about a distribution of the estate in accordance with the terms of the 1928 will, even though the 1933 will has been probated as Mr. Russ' last will. We see no improper interference with the jurisdiction and authority of the county court, nor any improper exercise of the equitable powers of the district court, in the respects complained of. The 1933 will was probated by the county court, and seemingly all debts have been paid by the representatives appointed by that court. It appears to us that the authority as well as the responsibility rested upon the district court to bring about performance of the equitable decree it had entered adjudging the rights of the parties with respect to Mr. Russ' estate. The authority of the county court and its appointees were founded upon the probate of the 1933 will, and, except for the decree of the district court in the present case, the duty of the county court and its appointees was to execute the provisions of the 1933 will. We do not see that the county court or its appointees were the proper agencies to bring about enforcement of the distribution ordered by the district court. The case is one where the jurisdiction of the county court is inadequate to provide the relief which the situation demands. We may appropriately borrow some of the language found in Stanley v. Henderson, 139 Tex. 160, 162 S.W.2d 95, 98, and say that the orders of the district court are supportable on the ground that "the jurisdiction of the district court, with its broad equity powers, is more adequate to grant relief than is the probate jurisdiction of the county court."

Finding no reversible error, we affirm the judgment of the trial court.