Anthony Levi TODD, Appellant,

v.

Morgan Sykes CARTWRIGHT, III, Appellee.

No. A14–84–214–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Nov. 29, 1984.

Don T. Schwartz, Schwartz, Kalinowaki & Hartfiel, Houston, for appellant.

Mark A. Sanders, Tudzin, Tobor & Altschil, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and CANNON and DRAUGHN, JJ.

## OPINION

J. CURTISS BROWN, Chief Justice.

This is a will contest. The court below imposed a constructive trust on one-half of the estate of Ruth Aline Cartwright. Its judgment was based on a jury finding that her 1977 will was contractual with that of her then husband. Appellant contends in two points of error that there was no evidence to support the jury finding of a contractual will. We affirm.[1]

---

1. The issues presented by this case only pertain to wills executed before September 1, 1979. Wills executed on or after that date must expressly recite that a contract exists in order to be held contractual. TEX.PROB.CODE ANN. § 59A (Vernon 1979); *Wiemers v. Wiemers,* 663 S.W.2d 355 (Tex.1984).

Appellant is Ruth Aline Cartwright's son by her first marriage. Appellee is the son of Morgan Sykes Cartwright, Jr., by his first marriage. Ruth and Morgan Jr. were married in 1951.

Ruth Cartwright's estate consists primarily of the proceeds from the sale of a ranch in Montgomery County, Texas. The ranch, less 50 acres, had passed to her under the 1977 will of Morgan Jr., who died in 1978.

Many years earlier, when Morgan Jr. had first inherited the land from Morgan Sykes Cartwright, Sr., the Cartwright family discussed its eventual disposition on several occasions. The family understanding reached at these discussions, at which both Morgan Jr. and appellee were present, was that the property would eventually go to appellee. Morgan Sr. had not directly given the land to appellee, it was concluded, because although Morgan Sr., and not Morgan Jr., had raised appellee, Morgan Sr. had never formally adopted him.

Three months apart in 1977, Ruth and Morgan, Jr. both executed wills. The same lawyer prepared both wills and the same witnesses attested them. Morgan Jr.'s will states the following:

"I give, devise and bequeath the residue of my estate, whether real, personal, or mixed and wherever situated, but excluding property over which I may have a power of appointment, to my beloved wife, Ruth Aline Cartwright. If my wife shall have predeceased me, then I give, devise and bequeath the residue of my estate, whether real, personal, or mixed, and wherever situated, but excluding property over which I may have power of appointment, to my children, Morgan Sykes Cartwright, III and Anthony Levi Todd, share and share alike...

"All references in this Will to my child or children include the above-named child and stepchild and it is my intention that Anthony Levi Todd be considered the same as if he were my natural child."

Ruth Cartwright's will states the following:

"I give, devise and bequeath all of my estate, whether separate or community, real, personal, or mixed and wherever situated, but excluding property over which I may have a power of appointment, to my beloved husband, Morgan Sykes Cartwright, Jr. If my husband shall have predeceased me, then I give, devise and bequeath all of my estate, whether separate or community, real, personal, or mixed, and wherever situated, but excluding property over which I may have a power of appointment, to my children, Anthony Levi Todd and Morgan Sykes Cartwright, III, share and share alike...

"All references in this Will to my child or children include the above named child and stepchild and it is my intention that Morgan Sykes Cartwright III be considered the same as if he were my natural child."

Following Morgan, Jr.'s death, Ruth executed a total of three wills. In the first, dated October 2, 1978, and in the second, dated November 1980, she preserved the structure of the 1977 will in which appellant and appellee were to share equally in her estate. In her last will, dated August 10, 1982, no gift to appellee appears. Instead her estate is left to appellant and to a male friend of Mrs. Cartwright's. Ruth died four and one-half months after executing the 1982 will.

■ In his first point of error appellant claims that the trial court erred in overruling his motion for judgment notwithstanding the verdict because there was no evidence in support of the finding of a contractual will. A "no evidence" point is a question of law and a jury verdict must be sustained if supported by more than a scintilla of evidence. *Gulf, Colorado & Santa Fe Ry. Co. v. Deen*, 158 Tex. 456, 312 S.W.2d 933, 937 (1958); *Burney v. Ibarra*, 415 S.W.2d 517, 519–20 (Tex.Civ.App.—San Antonio 1967, writ ref'd n.r.e.).

■ While it is true that courts in Texas and elsewhere have traditionally viewed claims of contractual will with caution, the rule in Texas appears to be that proof of contractual or "mutual" wills is sufficient

if the terms of the contract essential to recovery are supported by proof sufficiently clear for the court to determine what those terms are without resort to inference or conjecture. *Kirk v. Beard,* 162 Tex. 144, 345 S.W.2d 267, 272 (1961). As to the types of evidence admissible to prove contractual wills, the Supreme Court, in *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165, 167 (1946) stated the following:

"Proof may be made by the provisions of the will[s] itself or by competent witnesses who testify to the agreement; and evidence as to the declarations of the promissor, relations or conduct of the parties and other facts and circumstances, that tend to prove that an agreement was made ..." *Id.* 193 S.W.2d at 167.

▊ We find ample support in the record for the jury finding of contractual wills. The provisions of the wills themselves clearly indicate "the terms of the contract essential to recovery." The wills are identical in form and substance, with the one necessary exception that Morgan, Jr.'s will separately disposed of 50 acres of the Montgomery County property. The wills employ a deliberate identity of wording, especially regarding the sons, both of whom are called the "children" of each testator. They were prepared by the same lawyer, at nearly the same time, before the same witnesses. Indeed, a codicil modifying Morgan Jr.'s will was prepared at the same time as Ruth's will. The two wills should therefore be regarded as having been executed simultaneously, since under Texas law Morgan Jr.'s will speaks from the date of the codicil. *Reynolds v. Park,* 521 S.W.2d 300, 308 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.).

▊ It has been held that a similarity in the wording of wills and the fact of execution at the same time and place and before the same witnesses are facts which may be considered along with other evidence in determining whether or not the wills were executed pursuant to an agreement. *Pullen v. Russ,* 226 S.W.2d 876, 879 (Tex.Civ. App.—Fort Worth 1950, writ ref'd n.r.e.). The wills further conform to the theory of

an agreement in that they provide for an equal distribution naming the lineal descendants of *both* sides of the family. This manner of distribution, occurring in a case involving bequests to a couple's children by prior marriages, was expressly held to be an indication of an agreement in *Trlica v. Bunch,* 642 S.W.2d 540, 543 (Tex.Civ.App. —Dallas 1982, no writ).

We observe that in this case the testators exchanged one set of family relations for an entirely new one by virtue of these wills. Two sons by previous marriages, neither of whom was adopted or raised by the opposite testator, are each made the "child" of that testator, both by the express wording of the wills and by the equal distribution of the Montgomery County acres. Thus whereas before, the natural child of each testator would stand to inherit only lineally, under the wills they both inherit directly from the combined estate remaining to the surviving testator.

We think that these facts afford proof beyond a scintilla that the testators executed the wills pursuant to an agreement. To hold otherwise would require us to make the unlikely assertion that the similarity of the wills, their simultaneous execution, the exact equality in the distribution of the testators' property, and the change in the manner by which the sons would inherit, happened by accident and signify no clearly defined purpose. We believe instead that given these will provisions and the circumstances of their execution, it is at least doubtful whether wills like these could have been made without agreement that they should be so made. *See Odeneal v. Van Horn,* 678 S.W.2d 941 (1984) (per curiam); *Nye v. Bradford, supra,* 193 S.W.2d at 168.

If this were not enough, appellee also introduced the testimony of a competent witness, Pat Schuler, who stated that Morgan, Jr. had declared to her that the purpose of the two wills was to distribute his property to the two sons after he and Ruth had died. Ruth made no attempt to deny this understanding in this conversation. The combination of will provisions and pa-

rol testimony, both supporting the theory of an agreement, was held sufficient to prove a will contractual in *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165 (1946) and in *Pullen v. Russ,* 226 S.W.2d 876 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.).

*Magids v. American Title Ins. Co., Miami, Fla.,* 473 S.W.2d 460 (Tex.1971), cited by appellant, is inapplicable to this case. The wills in *Magids* failed to make any mention of community property, and since it was community property which was the subject of the dispute, the wills failed to evidence an agreement. Here the Montgomery County land, inherited by Morgan, Jr. from his father, was separate property fully covered by his will. In *Magids,* as in *Kastrin v. Janke,* 432 S.W.2d 539 (Tex.Civ. App.—El Paso 1968, writ ref'd n.r.e.), also cited by appellant, the parol testimony negated, rather than confirmed, the existence of a binding agreement. Here the opposite is true. We think the *Nye* and *Pullen* cases are controlling here. Accordingly, appellant's first point of error is overruled.

Appellant's second point of error attempts to raise a factual sufficiency point, but on its face complains of the trial court's overruling his motion for judgment notwithstanding the verdict. It can therefore raise nothing more than the "no evidence" point treated above. *Maxie v. Maxie,* 635 S.W.2d 175, 177 (Tex.App.—Houston, [1st Dist.] 1982, writ dism'd). Although it is not necessary to our holding, we can also say that the evidence introduced by appellee would be sufficient to support the verdict under a factual sufficiency standard as well. This conclusion is supported by the *Nye* and *Pullen* cases cited above, which declared that the evidence was sufficient to establish the wills before them as contractual "clearly" and "conclusively," respectively. See *Nye v. Bradford,* 193 S.W.2d at 168, and *Pullen v. Russ,* 226 S.W.2d at 880. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.