Bobbie Lynette PEARCE, Appellant,

v.

S.L. MEEK, Jr. (S.L. Meek, Sr. Estate), Appellee.

No. 12–88–00230–CV.

Court of Appeals of Texas, Tyler.

Aug. 18, 1989.

---

**5.** Thus bringing the trial practice in civil cases in harmony with the rule in criminal cases. *See* Tex.R.App.P. 31(c), (e)(1), (2).

H.L. McGee, Tyler, for appellant.

Dick Turner, Cleburne, for appellee.

BILL BASS, Justice.

This is an appeal from the probate court's judgment denying an application to probate the purported will of S.L. Meek, Sr., which was not produced in court.

S.L. Meek, Sr. (Sanford Meek) and Rosemary Meek were husband and wife. Appellant Pearce is the daughter of Rosemary Meek by a former marriage. Appellee, S.L. Meek, Jr., is the son of Sanford Meek by a former marriage. Rosemary Meek died September 7, 1971. Shortly thereafter her will was admitted to probate leaving all of her property to Sanford Meek "in fee simple to manage, sell or dispose of as he may wish or see proper." However, her will contained the further provision that "any property, both real and personal, that remains in his possession of my estate, shall pass to and vest in fee simple in my beloved daughter, Bobbie Lynette Pearce." In 1972, Sanford Meek married Maude Stanfield and lived until 1986. During the last two years of his life, Sanford Meek was the ward of S.L. Jr. who had possession of all his property including his safety deposit box and its contents.

At his death, Sanford Meek owned virtually all the property that he and Rosemary had acquired, including that which he had received under her will.

No will of Sanford Meek has been found. Appellant Pearce had not seen Sanford Meek for approximately fourteen years prior to his death. Appellee S.L. Jr. testified that he had diligently searched but had been unable to find a will belonging to his father.

Pearce testified that her mother had told her that she and Sanford Meek had both made wills leaving their property to Pearce upon the death of the last of them to die. Pearce also testified that after Rosemary Meek's death, Sanford Meek showed her his will which was identical to the recently

probated will of Rosemary Meek, that it was prepared by the same insurance agent, witnessed by the same persons, and executed at the same time.

Faye Stanfield is the daughter-in-law of Sanford Meek's last wife, Maude Stanfield Meek, and, she said, a weekly visitor in the Meek home. She testified that during one of her visits Maude Meek told her that Sanford Meek had had a will, but that "they [Maude and Sanford] had a fuss and she tore up, they tore up the will."

It is appellant Pearce's position that the last will of Sanford Meek was executed together with Rosemary's will in conformity with a contract between them to leave their property to Pearce; that after Rosemary's death and Sanford Meek's acceptance of the benefits under her will, Sanford Meek lacked the power to revoke his will. Appellee S.L. Jr. contends that his father died intestate and that as his sole heir, he is entitled to all of his father's property.

The trial court found, inter alia, that Sanford Meek and Rosemary Meek executed "reciprocal and mutual wills"[1] on January 21, 1971; that the will was not produced in court because it had been destroyed with the intention of revoking it; that although the wills were "reciprocal and mutual," they were not contractual; and concluded that Sanford Meek therefore died intestate.

In her first point of error, Pearce contends that the "trial court erred in holding that S.L. Meek, Sr. [Sanford Meek] died intestate because the will of S.L. Meek, Sr., was destroyed with the intention of revoking same."

Appellant argues that, although Faye Stanfield testified that a will was destroyed during a fuss, there is nothing in the record to show that it was the will in question nor is there any evidence that the testator San-

ford Meek destroyed the will or had it done under his direction and in his presence as required by Tex.Prob.Code Ann. § 63 (Vernon 1980).

■■■ Faye Stanfield testified that Maude had said "she tore up, they tore up the will" during a family argument. The trial obviously and reasonably inferred from this that the testator was present when the will was destroyed and participated in its destruction. There is a rebuttable presumption that one who destroys his will intended to revoke it. *Combs v. Howard*, 131 S.W.2d 206 (Tex.Civ.App.—Fort Worth 1939, no writ). The appellant Pearce is the sole witness who had seen the will and testified to its contents. It was in Sanford Meek's possession at the time. When a will is in the possession of the testator when last seen, failure to produce the will after the testator's death raises the presumption that the testator destroyed the will with the intention of revoking it, and the burden is cast on the proponent to prove the contrary. *Pipkin v. Dezendorf*, 618 S.W.2d 924, 925 (Tex.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). The proponent, appellant in this case, has failed to carry that burden. The first point is overruled.

In her second and third points of error, appellant maintains that "[t]he Trial Court erred in holding that the Wills of S.L. Meek, Sr. [Sanford Meek] and Rosemary Meek were not contractual" and "in holding that S.L. Meek died intestate and refusing to admit [his] Will ... to probate." From her argument, it is clear that Pearce attacks the trial court's failure to find the wills were contractual as being against the great weight or preponderance of the evidence.

■■■ Testamentary contracts are viewed with extreme caution by the courts. They must be established by full and satisfac-

---

1. Commentators have noted that in Texas cases, "confusion runs riot" in the use of the terms "joint" and "mutual." *See, e.g.,* 10 E. Bailey, Texas Law of Wills § 435 N. 2 (Texas Practice 1968). The modern trend is to confine the application of "mutual" to only those wills executed pursuant to a contract. *Magids v. American Title Ins. Co.,* 473 S.W.2d 460, 464 (Tex.

1971); *Hickman v. Harrell,* 211 S.W.2d 374, 379 (Tex.Civ.App.—Waco 1948), *rev'd on other grounds,* 147 Tex. 396, 215 S.W.2d 876 (1949). However, the trial court in this case obviously did not intend to so limit the use of "mutual," inasmuch as it found the wills to be "reciprocal and mutual" but *not* "contractual."

tory proof, and no inferences or presumptions will be indulged in their favor. *Magids v. American Title Insurance Co., Miami, Fla.,* 473 S.W.2d 460, 464 (Tex. 1971). The burden of establishing a contract is on the party asserting its existence. *Nye v. Bradford,* 144 Tex. 618, 193 S.W.2d 165 (1946).

Appellant Pearce argues that the will of Rosemary and the lost will of Sanford Meek were identical in form and substance, each leaving appellant whatever remained of his or her property at the death of the spouse; that they were prepared by the same insurance agent, executed at the same time, and witnessed by the same people. This, coupled with the extrinsic evidence of their intention provided by Pearce's testimony, provides, in her view, overwhelming proof that the wills were contractual.

Wills may of course contain specific language stating they are contractual. Contractual wills executed on or after September 1, 1979, may only be established by explicit provisions in the wills stating that a contract exists and reciting the terms of the contract. Tex.Prob.Code Ann. § 59A (Vernon 1980). In considering pre–1979 wills containing no such explicit contractual language, the courts have sometimes inferred a testamentary contract from the dispositive provisions of the will in question. But standing alone the fact that both spouses execute similar wills does not make them contractual even when the wills contain recitals that the other spouse is executing a similar will. *Pullen v. Russ,* 226 S.W.2d 876, 879 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.). However, a similarity in their wording and their execution at the same time before the same witnesses are facts which may be considered along with other evidence in determining whether the wills were executed pursuant to an agreement. *Id.*

In inferring the existence of a testamentary contract from the terms of the will itself, absent express contractual language, the courts have generally relied on two principal considerations. First, and most important, there must be an apparent intent on the part of each testator to treat the balance remaining from the estate of the first to die and the estate of the last to die as a single estate, and to provide for the disposition of the combined estates remaining on hand at the death of the last to die. *See Nye v. Bradford,* 193 S.W.2d at 168; *Pullen v. Russ,* 226 S.W.2d at 879; *Fisher v. Capp,* 597 S.W.2d 393, 399 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

Of less importance but sometimes persuasive is the manner of the distribution of the combined estate remaining at the death of the survivor. *See, e.g., Nye v. Bradford,* 193 S.W.2d at 168; *Todd v. Cartwright,* 684 S.W.2d 154, 157 (Tex.App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Knolle v. Hunt,* 551 S.W.2d 755, 760 (Tex. Civ.App.—Tyler 1977, writ ref'd n.r.e.); *Dickerson v. Yarbrough,* 212 S.W.2d 975 (Tex.Civ.App.—Dallas 1948).

■ Neither Rosemary Meek's will nor the reciprocal provisions of the purported last will of Sanford Meek demonstrate an intent to treat the estate of both parties as one, nor does either will provide for the disposition of the combined estates at the death of the last to die. Rosemary Meek's will leaves to Sanford Meek "... all of the property ... *I* may die seized and possessed of ...," "the remainder of all the property *I* may now own or be interested in." She disposed of the remainder left at Sanford Meek's death, providing that Pearce shall take in fee simple whatever remains in Sanford Meek's possession at his death of *my* estate. (Emphasis ours.) Pearce testified that the wills contained identical reciprocal provisions so presumably Sanford Meek's will is similarly limited. Neither will mentions the other. Neither will attempts to affect the property of the surviving spouse nor does either put the survivor to an election of whether to take under the will.

Similar identical reciprocal wills prepared by the same person and executed at the same time were considered by the Supreme Court in *Magids v. American Title Insurance Co., Miami, Fla.,* 473 S.W.2d 460 (Tex.1971). The *Magids* court concluded that, standing alone, the terms of the wills

at issue did not prove a testamentary contract.

The Meek wills do not specify a manner of distribution that tends to prove an agreement intended to bind the survivor. The probated will of Rosemary Meek provides a very ordinary disposition of her estate leaving her husband her property with whatever remained of her property at his death going to her only child. The wills dispose of only that "of which I die seized and possessed." There are no specific devises or bequests. There was no attempt to preserve an equal distribution to each testator's children from prior marriages as was the case in *Todd v. Cartwright*. We conclude that the terms of the Meek wills do not prove they are contractual.

Appellant also testified that the same person prepared the wills and that they were executed at the same time before the same witnesses. This is evidence the trial court may consider in determining whether the wills are contractual. If, as the trial court held, two reciprocal wills were made, it seems almost undeniable that the testators agreed to make them. But a mere agreement to make wills does not necessarily demonstrate the testators' intent to enter an irrevocable compact affecting both their estates. *Kastrin v. Janke*, 432 S.W.2d 539, 542 (Tex.Civ.App.1968).

> The clear weight of authority, and certainly the sounder view, is that the mere presence of either joint or mutual wills does not raise any presumptions that they were executed in pursuance of a contract. Nor is this rule altered by evidence that the parties had 'agreed' to the making of such wills.

10 E. Bailey, Texas Law of Wills § 435 n. 9 (Texas Practice 1968) (quoting Sparks, Contracts to Make Wills 27 (1956)).

■ Pearce's testimony provides the only evidence of the execution and contents of the purported lost will. Her testimony also supplies the only evidence of the oral declarations of Rosemary and Sanford Meek concerning their wills. She testified that, while her mother was in the hospital, her mother told her that she and Sanford Meek had made wills leaving everything to her. Sanford Meek was present, she said, when Rosemary told her about the wills and he said nothing. Shortly before her mother's death Sanford allowed her to read the wills, commenting that because his son "didn't care enough about him to come to see him when he was alive, he didn't want to leave him his property when he was dead." It is only from this reading of his will in the summer of 1971 that she was able to testify to the will's reciprocal provisions. The year after Rosemary died Pearce asked him where his will was and he replied "[i]t's right in there in the other room just like it's always been and I don't intend to change it." She never saw Sanford Meek during the fourteen remaining years of his life.

Although Pearce argues that this extrinsic evidence provides overwhelming evidence that the wills were contractual, we disagree. Rosemary and Sanford Meek's oral statements about their wills do no more than confirm what would be readily apparent from the wills themselves. During a time when he was estranged from his son and while his wife was facing an untimely death, Sanford Meek executed a will leaving all of *his* property to his dying wife's only daughter. His statement that "he didn't intend to change it" in fact implies that he believed he could change it if he wanted to. Nothing in their statements indicates that either testator understood that they had irrevocably undertaken to bind the survivor to leave Pearce all of his or her property.

Finally, appellant argues that it is inconceivable that Rosemary Meek would have executed a will leaving her daughter entirely unprovided for at her husband's death, with all her property likely to pass by the law of intestacy to her husband's son of a prior marriage. The construction of Rosemary Meek's will is not before us and it is not necessary to this opinion that we determine the character of the estates given to Sanford Meek or appellant by Rosemary's will. *However, see Harrell v. Hickman*, 147 Tex. 396, 215 S.W.2d 876 (1948).

Appellant Pearce's testimony was the only evidence of the execution and contents

of Sanford Meek's will and of the testators' oral statements regarding their wills. The evidence of a party or an interested witness, though not contradicted by other witnesses, does no more than raise a fact issue and cannot be given conclusive effect unless it is clear, direct, positive, free of circumstances that cast suspicion upon it, and easily controverted if untrue. *Southland Life Ins. Co. v. Aetna Casualty and Surety Co.*, 366 S.W.2d 245 (Tex.Civ.App.—Fort Worth 1963, writ ref'd n.r.e.). The insurance agent who prepared the wills is dead, as are the only other persons known to be present at their execution, and every other person, except the appellant, who might have known the contents of Sanford Meek's will or testified to the presence or absence of an intent on the part of Rosemary and Sanford Meek to bind the survivor to leave all of his or her property to appellant. It would have been utterly impossible for the appellee to have offered testimony directly controverting that of appellant Pearce. The trier of facts may reject a party's testimony in whole or in part. *Calvin v. Koltermann, Inc. v. Underream Piling Co.*, 563 S.W.2d 950 (Tex. Civ.App.—San Antonio 1977, writ ref'd n.r. e.). And the findings of the trier of facts are binding on an appellate court unless they are supported by no evidence or they are so against the great weight of the evidence as to be manifestly unjust. *Lane v. Brown*, 312 S.W.2d 735 (Tex.Civ.App.— Dallas 1958, writ ref'd n.r.e.).

In considering a factual insufficiency (or against the great weight) point of error, the reviewing court must consider and weigh all of the evidence and set aside the finding and remand the cause for new trial only if it concludes that it is so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

Appellant bore the burden of establishing the existence of a testamentary contract between Rosemary and Sanford Meek. *Nye v. Bradford*, 193 S.W.2d at 167. We conclude, as did the Supreme Court in the *Magids* case involving separate wills with no contractual intent evident

in either will, that the appellant simply failed to carry the burden of proof.

The trial court's finding that the wills are not contractual is not so against the great weight of the evidence as to be manifestly unjust. The trial court's conclusion that Sanford Meek died intestate is supported by the findings. Points two and three are overruled.

The judgment is affirmed.

RAMEY, C.J., not participating.