■ In the Matter of the Estate of HARRY A. COHEN, DECEASED. JOEL GOLDBERG, Respondent; RAE COHEN, Appellant.— In a probate proceeding, the decedent's widow, Rae Cohen, appeals from stated portions of a decree of the Surrogate's Court, Kings County (Ostrau, S.), dated February 13, 1991, which, *inter alia,* upon refusing to admit a will to probate, impressed a constructive trust upon the entire estate for the benefit of the beneficiaries named in the will, and directed disposition of the decedent's estate.

Ordered that the decree is modified, on the law, by deleting the provision thereof which impressed a constructive trust upon the entire estate, and substituting therefor a provision impressing a constructive trust only on that portion of the decedent's estate which was not to pass to the decedent's

widow outright under the will; as so modified, the decree is affirmed insofar as appealed from, with costs to the respondent, payable by the appellant personally.

The decedent and his wife, the appellant, executed mutual wills that were mirror images of each other. The couple was childless and wanted their assets to be shared equally by their respective relatives. Accordingly, simultaneous with the execution of the wills, they executed a written contract which prohibited either party from revoking or changing the wills in any way, without the written consent of the other, and they further provided that any attempt to do so would be ineffective as against the claims of the legatees of the mirror wills. The wife survived the decedent, whose will is the subject matter of this appeal. His will provided that a portion of his estate would be placed in trust with the income therefrom to the appellant for life, and the remainder to their relatives, who were enumerated in the will. The decedent bequeathed the rest of his estate to the appellant outright.

After the decedent's death, the appellant wife, alleging that she could not find the decedent's will, applied for and obtained letters of administration. As the sole distributee, she received the entire net estate. The petitioner Joel Goldberg (hereinafter the proponent), a coexecutor and cotrustee under the will, commenced the instant proceeding against her to revoke the letters of administration that were issued to her, and to admit to probate a conformed copy of the decedent's will or, alternatively, for specific performance of the aforementioned agreement.

The Surrogate's Court found that there was no proof to justify a finding that the wife had *fraudulently* destroyed the will, and that, therefore, the proponent's proof was insufficient to overcome the presumption of revocation that attaches to a lost or destroyed will *(see,* SCPA 1407). Accordingly, the court properly refused to admit to probate a conformed copy of the will. The Surrogate held, however, that the presumption of revocation does not apply to contracts precluding the revocation of a will, and that the revocation of a will does not extinguish the contractual obligations of the parties. Finding that at the time of the decedent's death, the agreement was still in force and had not been revoked, the Surrogate went on to rule that the parties, acting upon mutual consideration, clearly intended to bind themselves by contract to a certain disposition of their estate as specified in their mirror wills.

"As a will an instrument is revokable at pleasure, but as a contract, if supported by adequate consideration, it is enforce-

able in equity" *(Rastetter v Hoenninger,* 214 NY 66, 71). Thus, there is an important distinction between a contract obligating an individual to execute a reciprocal will and the will itself. A contract to make a testamentary provision is separate and distinct from the will itself, as the contract may be enforceable in equity even though, from a technical standpoint, it has no effect on the will's status as a legal instrument *(see,* 9D Rohan, NY Civ Prac ¶ 13-2.1 [9]). Concisely stated, it is the contract, and not the will, which is irrevocable *(see,* 38 NY Jur 2d, Decedents' Estates, § 324; *see also, Glass v Battista,* 43 NY2d 620). Thus, when two or more persons have executed a joint will containing language sufficiently explicit to evidence an agreement not to revoke it, either party at pleasure, may revoke the instrument as a will, but it is enforceable in equity as a contract, if supported by adequate consideration *(see, Glass v Battista, supra; Oursler v Armstrong,* 10 NY2d 385; 1 Fingar, Bookstaver & McQuaid, NY Wills & Trusts § 4:09 [2d ed 1984]; 2 Williston, Contracts § 356, at 832-833 [3d ed]; 11 Williston, Contracts § 1420, at 712-713; 79 Am Jur 2d, Wills, § 796; 7B Warren's Heaton Surrogates' Courts § 100 [8] [6th ed]; *Notten v Mensing,* 3 Cal 2d 469, 45 P2d 198; *Seat v Seat,* 172 Tenn 618, 113 SW2d 751; *Watkins v Covington Trust & Banking Co.,* 303 Ky 644, 198 SW2d 964, 966; *Pearce v Meek,* 780 SW2d 289 [Tex]; *Estate of Shepherd v Shepherd,* 130 So 2d 888 [Fla]). Here, it is no less true, considering that the parties had not only mirror wills, but a separate contract ancillary to their wills.

We conclude that, although the decedent's will was found to be presumptively revoked, the contract is still enforceable in equity. The Surrogate made a point of flatly rejecting, on credibility grounds, the testimony of the wife's witnesses who claimed that the decedent and his wife had revoked the contract shortly before his death. We afford great weight to the factual finding of the Surrogate that the *contract* had not been revoked or altered prior to the decedent's death and that it was, therefore, binding upon the decedent's estate.

The Surrogate correctly concluded that the contract was enforceable in equity as a means of validating the contractually expressed objectives of the couple, and that those objectives could not be thwarted merely because the will could not be found after the decedent's death. The creation and execution of a contract was the device the couple used to guard against such an eventuality. Thus, the Surrogate properly imposed a constructive trust *(see generally,* Bogert, Trusts and Trustees § 480 [2d ed]). He erred, however, by imposing a

constructive trust on the decedent's *entire* estate. Thus, the decree of the Surrogate should be modified to impose a constructive trust on only that portion of the decedent's estate that will not pass to the wife outright under the will *(see, Tutunjian v Vetzigian,* 299 NY 315, 320-321). Mangano, P. J., Rosenblatt and Santucci, JJ., concur.

Harwood, and Balletta, JJ., concur in part and dissent in part, and vote to reverse the decree insofar as appealed from, and to deny the application to impose a constructive trust, with the following memorandum: We agree with our colleagues in the majority that the Surrogate correctly found that the proponent did not offer sufficient proof to overcome the presumption that the will had been revoked. However, we disagree with our colleagues' finding that the contract is enforceable. Although a joint or mutual will which expressly recites within its provisions, or by a separate instrument, that it cannot be altered or revoked, is contractually binding upon the survivor *(see, Margulis v Teichman,* 125 Misc 2d 729, 732; *see also,* 9D Rohan, NY Civ Prac ¶ 13-2.1 [8]), the enforceability of such a contract is dependent upon the existence of a valid and enforceable will. Here, however, the Surrogate found that the presumption that the will had been revoked was not rebutted. To allow the will to be enforced contractually is not only inconsistent, but allows the proponent of the will to do indirectly what cannot be done directly. Therefore, we vote against imposing a constructive trust on any portions of the decedent's estate.