Kenneth William REYNOLDS,
Appellant,

v.

In the Matter of the ESTATE OF
Jewel Laray BENEFIELD,
deceased, Appellee.

No. 08–98–00146–CV.

Court of Appeals of Texas,
El Paso.

June 24, 1999.

Rehearing Overruled Aug. 4, 1999.

David Greenhaw, Odessa, for appellant.

Walter E. Wilson, Odessa, for appellee.

Before Panel No. 3 BARAJAS, C.J., LARSEN, and CHEW, JJ.

## *O P I N I O N*

SUSAN LARSEN, Justice.

This appeal concerns the will of Jewel LaRay Benefield, and the imposition of a constructive trust upon her estate to benefit the nieces and nephews of her late husband. Benefield's son, Kenneth Reynolds, appeals. Finding legally insufficient evidence to sustain the jury's finding of contractual mutual wills, we reverse and render judgment that the 1997 will of Jewel LaRay Benefield be probated, and letters testamentary issue accordingly.

### *FACTS*

Jewel LaRay Benefield died on October 11, 1997. Her husband, Jim Benefield, predeceased her by many years. After her husband's death, Jewel inherited all his property in fee simple. The couple had no children together, but Jewel had a son, Kenneth Reynolds, by a prior marriage. Jim had four nieces and nephews, children of his brother Robert: James Dean Benefield, Barbara Suzanne Padgett, Marcia Diane Weinkauf, and Robert P. Benefield III.

After Jewel's death, her son Kenneth filed an application to probate her will of January 4, 1997, which named him executor and left her entire estate to him. Jim Benefield's nieces and nephews contested the will, claiming that it was the product of undue influence, coercion, and fraud. They maintained that Jewel and Jim had an "understanding" that upon the death of the couple, one-half their estate would go to Kenneth Reynolds, and one-half to them. Jim Benefield's will of July 1, 1977 contained no mention of a contract or understanding, or any recitation that it was a mutual will. It did provide that if his wife predeceased him, his estate would be divided equally between his stepson Kenneth and his brother, Robert Benefield. (Robert Benefield predeceased Jim. The will provided in that event, Robert's share of the estate would go to Robert's issue.)

Similarly, in Jewel's earlier will of August 20, 1996, she left one-half her Texaco stock and certificates of deposit to Kenneth, and one-half to Robert's children,

divided equally between the four. She directed that two rental properties be sold and the proceeds divided between the four nieces and nephews. She left her residual estate to Kenneth. This document contained no indication that it was a mutual or contractual will. It was revoked by the January 1997 will.

## JURY FINDINGS

Kenneth Reynolds moved to probate the January 1997 will, which named him sole beneficiary of his mother's estate. The nieces and nephews of Jim Benefield contested, making two claims: (1) that Jewel Benefield lacked testamentary capacity when she signed the 1997 will, or alternatively had been subject to undue influence and coercion; and (2) that Jewel and their uncle had contractually agreed to execute wills which left one-half their property to Kenneth and one-half to the children of Robert Benefield, and that contract should be enforced. The case was tried to a jury, which found against the nieces and nephews on the first issue, but did find the following:

> Jim H. Benefield and Jewel LaRay Benefield entered into an agreement between themselves during their lifetimes that each of them would make a Will whereby the survivor would have the use of all of the property of both of them during the survivor's life, and then the remaining property would pass one-half to Jim's selected relatives and one-half to Jewel LaRay's selected relative upon the death of the survivor.
>
> Jim H. Benefield executed his Will dated July 1, 1977 pursuant to that agreement. Jewel LaRay's Will dated January 4, 1997 breached the agreement.

[T]he act of Jewel LaRay Benefield in revoking the Will of August 20, 1996 by physically destroying same … was a breach of the agreement she had with Jim H. Benefield.

Accordingly, the trial court entered judgment finding that Jewel LaRay Benefield had been estopped to revoke her 1996 will. The trial court therefore entered judgment awarding one-half of the estate to Kenneth Reynolds, and imposing a constructive trust in favor of the four children of Robert Benefield as to the remaining half.

## LAW OF CONTRACTUAL WILLS

■ Kenneth Reynolds raises (inartfully, but we think adequately) issues as to the legal and factual sufficiency of the evidence to support a finding that Jim and Jewel LaRay Benefield agreed to execute mutual wills. Mutual wills are testamentary instruments executed pursuant to an agreement between two or more persons to dispose of their property in a particular manner, each in consideration of the other.[1] The primary characteristic of a joint and contractual will is a comprehensive plan for the disposition of all property owned by both parties.[2] There must be intent on the part of each testator to treat the balance remaining from the estate of the first to die and the estate of the last to die as a single estate, and to provide for the disposition of the combined estates remaining on hand at the death of the last to die.[3]

■ Texas courts traditionally view claims of mutual, contractual wills cautiously.[4][5] The party contending that mutual wills are contractual as well as testamentary in character has the burden of

1. 74 TEX. JUR.3D *Wills* § 19 (1990).

2. *Wiemers v. Wiemers*, 683 S.W.2d 355, 356 (Tex.1984) (quoting *Novak v. Stevens*, 596 S.W.2d 848 (Tex.1980)).

3. *Pearce v. Meek*, 780 S.W.2d 289, 292 (Tex. App.—Tyler 1989, no writ).

4. *Id.* at 291–92; *Todd v. Cartwright*, 684 S.W.2d 154, 156–57 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

5. Indeed, the probate code requires that a contract to make a will executed on or after September 1, 1979 must expressly recite that a contract exists and set out its material provisions to be enforceable. TEX. PROB.CODE ANN. § 59A(a) (Vernon 1980). Because the evidence is that any contract here was entered into in 1977 or before, we do not apply the probate statute requirements in this case. This case is certainly illustrative of why such a requirement is desirable.

proving that the wills were intended to be contractual and resulted from the mutual agreement of both participants.[6] The contract to create mutual wills must be established by full and satisfactory proof, and no inferences or presumptions are indulged in its favor.[7] Contractual wills may be proven through two sources: (1) the instruments themselves; and (2) extrinsic evidence, such as testimony on declarations of the promisor, the relations or conduct of the parties, and other facts and circumstances tending to prove an agreement was made.[8] Parole testimony that mutual wills were executed pursuant to an agreement, when coupled with the provisions of the wills themselves, where such provisions are consistent with the theory that the wills were executed pursuant to a mutual agreement, is sufficient to support a jury finding that mutual contractual wills were executed between the parties.[9] Similar wording of the wills, and that they were executed at the same time and place and before the same witnesses, may also evidence an agreement.[10]

Moreover, the cases establish a two-pronged test governing contractual wills. The test requires that:

(1) the gift to the survivor is not absolute and unconditional, even though it may initially appear to be so; and

(2) the balance remaining from the estate of the first to die and the estate of the last to die is treated as a single estate and jointly disposed of by both testators in the secondary dispositive provisions of the will.[11]

With these guidelines in mind, then, we will examine the evidence presented at trial on the issue of contract.

## STANDARD OF REVIEW— LEGAL SUFFICIENCY

When reviewing a legal sufficiency point, this court "must consider only the evidence and inferences tending to support the trial court's finding, disregarding all contrary evidence and inferences."[12] If there is more than a scintilla of such evidence to support the finding, the claim is sufficient as a matter of law, and any challenges go merely to the weight to be accorded the evidence.[13] A no evidence point may only be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact.[14] There is some evidence when the proof supplies a reasonable basis on which reasonable minds may reach different conclusions about the existence of the vital fact.[15]

**6.** *Kastrin v. Janke,* 432 S.W.2d 539, 540 (Tex. Civ.App.—El Paso 1968, writ ref'd n.r.e.); *Kilpatrick v. Estate of Harris,* 848 S.W.2d 859, 862 (Tex.App.—Corpus Christi 1993, no writ).

**7.** *Magids v. American Title Ins. Co.,* 473 S.W.2d 460, 465 (Tex.1971).

**8.** *Knesek v. Witte,* 754 S.W.2d 814, 817 (Tex. App.—Houston [1st Dist.] 1988, writ denied); *Perl v. Howell,* 650 S.W.2d 523, 525 (Tex. App.—Dallas 1983, writ ref'd n.r.e.).

**9.** *Knesek,* 754 S.W.2d at 817; *Pullen v. Russ,* 226 S.W.2d 876, 880 (Tex.Civ.App.—Fort Worth 1950, writ ref'd n.r.e.).

**10.** *Todd,* 684 S.W.2d at 157.

**11.** *In re Estate of Johnson,* 781 S.W.2d 390, 393 (Tex.App.—Houston [1st Dist.] 1989, writ denied); *see Fisher v. Capp,* 597 S.W.2d 393, 398 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

**12.** *Wal–Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *Continental Coffee Prods. Co. v. Cazarez,* 937 S.W.2d 444, 450 (Tex.1996).

**13.** *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Wal–Mart Stores, Inc. v. Rangel,* 966 S.W.2d 199, 200 (Tex.App.—Fort Worth 1998, pet. denied).

**14.** *Rangel,* 966 S.W.2d at 200 (internal citations omitted).

**15.** *See Orozco v. Sander,* 824 S.W.2d 555, 556 (Tex.1992); *Rangel,* 966 S.W.2d at 200.

## EVIDENCE SUPPORTING JURY FINDING OF CONTRACTUAL WILLS

We have perused the record for evidence supporting the jury's finding that the Benefields entered a contract to make mutual wills. Within the wills themselves, we have culled the following: Jim Benefield's will left his entire estate to his wife in fee simple. There is nothing in this record indicating he intended anything other than an absolute, unconditional gift of his entire estate to Jewel. It provided that if Jewel predeceased him, half his estate would go to her son Kenneth Reynolds and half to his brother, Robert. The record is devoid of evidence that Jewel executed a will at or near the time of Jim's 1977 will; contestants rely solely upon her 1996 will to show a joint plan to devise the couple's estate. Jewel's 1996 will did not stipulate a simply half-and-half division. Instead, it left half her stock, half her certificates of deposit, and all her residual estate to Kenneth; half the stock and C.D.'s, and all her rental properties to the children of Robert Benefield. Although we might speculate that these specific bequests add up to a fifty-fifty split of the estate, there is no evidence of this in the record.

As to extrinsic evidence supporting the existence of an agreement to execute contractual, mutual wills, any testimony that may be construed as such comes from the nieces and nephews of Jim Benefield, who stand to benefit from such a finding. Parole evidence supporting a contract to make mutual wills includes the testimony of Marcia Weinkauf that:

> My aunt or my uncle told me in 1975 or '74 when I was helping paint one of the houses that one of their—our inheritance was one of the four rent houses. That is what my uncle said.

Weinkauf testified she had nothing in writing documenting this understanding that her aunt and uncle had an agreement and neither of them could change their future wills. Likewise, James Dean Benefield testified to his "understanding" that he would be a beneficiary of his uncle's estate, but he had nothing in writing to substantiate that agreement. His understanding was based upon his uncle's 1977 will. Barbara Padgett, another niece, testified:

> Uncle Jim and Aunt LaRay had always indicated to us kids that because Uncle Jim and Aunt LaRay had never had any children of their own that—and since Kenneth was not Uncle Jim's son, that upon their death that we would receive Uncle Jim's half of the estate and Kenneth would receive Aunt LaRay's half of the estate.

In short, the evidence in support of a contract to make mutual wills consists of: (1) the 1977 will of Jim Benefield and the 1996 will of Jewel LaRay Benefield, executed nineteen years apart and containing no statement that they were intended to jointly dispose of the couple's estate, rather evidencing Jim's intention to make an absolute gift of his estate to his wife; and (2) the testimony of would-be beneficiaries under the joint plan, that it was always their "understanding" that they would inherit from their aunt and uncle after both died.

We must conclude that this record is legally insufficient to support the jury finding that there was a contract between Jim Benefield and Jewel LaRay Benefield to execute mutual wills. Nothing about the wills themselves helps us toward that conclusion: they were executed many years apart, they do not mirror language or bequests, and they certainly contain no contractual language. Most importantly, Jim Benefield's will devises his entire estate to his wife in fee simple.

Nor do we find the testimony of the nieces and nephews evidence of a contract; at most, they testify to an "understanding" that they would inherit part of the estate. Although their uncle apparently did intend to leave them (or their father) a substantial part of his holdings if he outlived his wife, there is nothing in this record to prove that he entered into a contract with her which would bind her to that disposi-

**890**

tion upon her death twenty years later. Indeed, everything in this record mitigates against such a conclusion: the fee simple bequest from Jim to Jewel, the lengthy period between the execution of Jim's will and that of Jewel, many differences of form and substance between the two wills. We conclude there is no evidence of a contract to execute mutual wills between these parties. Appellant Kenneth Reynolds' issue on appeal urging legal insufficiency of the evidence is sustained.

### *CONCLUSION*

For these reasons, we reverse the judgment of the trial court and render judgment that the 1997 will of Jewel LaRay Benefield be entered in probate.